Anton C. Gerschler, Esq.  Bar No. 098682
Dena M. Acosta, Esq. Bar No. 169719
North County Law Firm
914-A North Coast Highway101
Encinitas, CA 92024
Phone (760) 633-4060
Fax (760) 633-4066

Leon Opolski, Esq.  Bar No. 182482
5151 Murphy Canyon Road, Ste. 200
San Diego, CA 92123

Attorneys for Plaintiff Jennifer Medina

FILED
'08 JUL 11 PM 3:14
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# United States District Court
## Southern District of California

| | |
|---|---|
| JENNIFER MEDINA, an individual,<br><br>  Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, CITY OF ENCINITAS, CITY OF SOLANA BEACH, DEPUTIES MARK RITCHIE and KARLA TAFT, individually and in their capacity as deputies for the SAN DIEGO SHERIFF'S DEPARTMENT, OFFICERS TIM FENTON and LEO NAVA, individually and in their capacity as officers for the CALIFORNIA HIGHWAY PATROL,<br><br>  Defendants. | CASE NO. '08 CV 1252 JAH RBB<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF 42 U.S.C. §1983**<br>   [EXCESSIVE FORCE: Decedent]<br>2. **VIOLATIONS OF 42 U.S.C. §1983**<br>   [EXCESSIVE FORCE: Plaintiff]<br>3. **VIOLATIONS OF 42 U.S.C. §1983**<br>   [UNLAWFUL CUSTOMS, HABITS, PRACTICES, PROCEDURES]<br><br>**JURY DEMAND ON ALL COUNTS** |

Plaintiff JENNIFER MEDINA, alleges:

### SUMMARY OF COMPLAINT

1. This is a lawsuit brought by the widow of United States Marine Corps Corporal Robert J. Medina for violation of constitutional rights and damages arising out of a reckless and unreasonable police pursuit involving multiple law enforcement agencies which culminated in the unjustified shooting death of her husband on Highway 101 in Solana Beach shortly after his return from a tour in Iraq.

## JURY TRIAL DEMANDED

2. PLAINTIFF hereby invokes her right to a trial by jury.

## JURISDICTION AND VENUE

3. This is a lawsuit for money damages and is brought pursuant to 42 U.S.C. §1983, et seq. and the Fourth and Fourteenth Amendments to the United States Constitution, for personal injuries and violation of constitutional rights by Defendants. Jurisdiction of this court is founded under 28 U.S.C. §1331 §1343 and the aforementioned statutory and constitutional provisions. Venue is proper in the Southern District of California because the acts which form the basis of Plaintiff's claim arose in the county of San Diego, California.

## PARTIES

4. At all times relevant to this matter, Plaintiff JENNIFER MEDINA was an individual residing in the County of San Diego, State of California, and the spouse of ROBERT J. MEDINA (hereinafter "MEDINA" or "decedent").

5. JENNIFER MEDINA brings this action on her own behalf and as the decedent's successor in interest as defined in California Code of Civil Procedure sections 377.11 and 377.34.

6. Defendant COUNTY OF SAN DIEGO (hereinafter "COUNTY") is a public entity existing under the laws of the State of California. The COUNTY operates under it's authority the SAN DIEGO SHERIFF'S DEPARTMENT (hereinafter collectively referred to as either 'COUNTY," "SAN DIEGO SHERIFF'S DEPARTMENT," or "SDSD") and all Deputies employed by SDSD are employees of defendant COUNTY.

7. At all relevant times Defendant MARK RITCHIE (hereinafter "RITCHIE") was a deputy sheriff for the SAN DIEGO SHERIFF'S DEPARTMENT. In committing the acts and omissions alleged in this complaint, MARK RITCHIE was acting under color of law and within the course and scope of his employment as a deputy sheriff for the SAN DIEGO SHERIFF'S DEPARTMENT and the COUNTY OF SAN DIEGO.

8. At all relevant times Defendant KARLA TAFT (hereinafter "TAFT") was a deputy sheriff for the SAN DIEGO SHERIFF'S DEPARTMENT. In committing the acts and omissions alleged in this complaint, KARLA TAFT was acting under color of law and within the course and scope of her employment as a deputy sheriff for the SAN DIEGO SHERIFF'S DEPARTMENT and the COUNTY OF SAN DIEGO.

9. At all relevant times Defendant TIM FENTON (hereinafter "FENTON") was an officer for the CALIFORNIA HIGHWAY PATROL. In committing the acts and omissions alleged in this complaint, TIM FENTON was acting under color of law and within the course and scope of his employment as an officer for the CALIFORNIA HIGHWAY PATROL and the STATE OF CALIFORNIA.

10. At all relevant times Defendant LEO NAVA (hereinafter "NAVA") was an officer for the CALIFORNIA HIGHWAY PATROL. In committing the acts and omissions alleged in this complaint, LEO NAVA was acting under color of law and within the course and scope of his employment as an officer for the CALIFORNIA HIGHWAY PATROL and the STATE OF CALIFORNIA.

11. Defendant CITY OF ENCINITAS (hereinafter "ENCINITAS") is a public entity, duly organized and existing under the laws of the State of California and contracts with the COUNTY for law enforcement services provided by the SAN DIEGO SHERIFF'S DEPARTMENT.

12. Defendant CITY OF SOLANA BEACH (hereinafter "SOLANA BEACH") is a public entity, duly organized and existing under the laws of the State of California and contracts with the COUNTY for law enforcement services provided by the SAN DIEGO SHERIFF'S DEPARTMENT

13. Each defendant sued in this complaint was acting within the course and scope of their employment and performed the acts described under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California.

14. Each of the defendants caused and is responsible for the below-described unlawful conduct and resulting injuries by, among other things, personally participating in

the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct by failing to take action to prevent unlawful conduct; by failing and refusing with deliberate indifference to plaintiff's rights to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

15. At all relevant times, each of the defendants was, at all relevant times, the agent, servant, or employee of each of the other defendants, that each defendant engaged in the conduct described in this complaint within the course and scope of this agency or employment, that each defendant did so with the permission, consent, authority, and ratification of their co-defendants, and each of them.

**FACTUAL ALLEGATIONS**

16. Decedent MEDINA was a 22- year old active duty Marine who had just returned from a tour in Iraq less than three months before being shot and killed by Defendants at the conclusion of a police chase all because he failed to comply with an attempted traffic stop allegedly initiated because the officers observed him weaving in a traffic lane and suspected he may have been driving under the influence.

17. Upon returning from his tour in Iraq, decedent MEDINA was suffering from post traumatic stress syndrome. His then undiagnosed mental illness was creating turmoil in his family relationships and adversely impacting his ability to perform at this command.

18. On the evening of November 15, 2006, decedent MEDINA and his spouse Plaintiff JENNIFER MEDINA got into a minor argument that intermittently continued throughout the evening. Around 1:00 a.m, MEDINA informed Plaintiff that he was going out and Plaintiff protested in vain that he not leave.

19. At approximately 1:30 a.m, on November 16, 2006, CHP officers attempted to conduct a traffic stop of the decedent allegedly initiated because the officers observed him weaving in a traffic lane and suspected he may have been driving under the influence.

After his death, toxicology tests revealed that the decedent had no alcohol in his system and no significant amounts of any other substance sufficient to impair his driving.

20. In addition to being a Marine, decedent MEDINA was Hispanic and fit the racial profile that the California Highway Patrol has previously been accused of unlawfully targeting for traffic stops. At the time of MEDINA's death, the California Highway Patrol was still complying with the terms of a settlement agreement reached in a lawsuit arising from those allegations of racial profiling.

21. The SAN DIEGO SHERIFF's DEPARTMENT which intervened in the pursuit has likewise been accused of racial profiling of Hispanic males. In the SAN DIEGO SHERIFF's DEPARTMENT SDSD's case, the law enforcement activity at issue has been the use unjustified deadly force in the City of Vista, California.

22. MEDINA was subjected to the SDSD's racial profiling in Vista, where he lived, a few weeks before he was shot and killed. He was arrested outside of his Vista home where he was washing his car after deputies allegedly responded to a call of a suspicious person. Deputies then arrested him for possessing a baton that was issued to him by the Marine Corps.

23. MEDINA did not yield to the CHP's attempted traffic stop and a slow speed pursuit ensued through Oceanside. Exercising unreasonable judgment, the CHP officers elected to continue the pursuit despite the fact that the decedent was not so impaired or reckless in his driving that public safety concerns necessitated his immediate arrest. Officers attempted to forcibly stop the decedent using spike strips and pursuit immobilization technique (PIT) maneuvers which proved unsuccessful other than to escalate the decedent's fright.

24. The decedent returned to the freeway and headed south on I-5 at a normal rate of speed. As they left Oceanside, the CHP officers requested that an Oceanside canine unit remain in the pursuit. MEDINA exited I-5 at Carlsbad and headed toward Highway 101 south. By the time the pursuit entered Leucadia, there were at least five

1 patrol cars pursuing the decedent who's only potential criminal activity up until that point
2 was failure to yield to a traffic stop.

3     25.   The entire dynamics of the pursuit changed however once defendant MARK
4 RITCHIE recklessly intervened in the pursuit without authorization at the intersection of
5 Leucadia Boulevard and Highway 101. Defendant RITCHIE took it upon himself to deploy
6 a spike strip at Leucadia Boulevard and placed himself in a dangerous position in the path
7 of the pursuit.

8     26.   At the same time and location, CHP officers elected to perform another
9 reckless and unreasonable pit manuever which further endangered defendant RITCHIE.
10 The unsafe and reckless acts initiated by RITCHIE and the CHP officers which jeopardized
11 the safety of one of their own was blamed on the decedent. An officer radioed in law
12 enforcement's safety mishap as an "assault with a deadly weapon" creating an
13 unreasonable and unjustified heightened threat alert to other law enforcement personnel
14 monitoring, participating and joining in the pursuit.

15     27.   The pursuit continued south on Highway 101 with Defendant RITCHIE
16 continuing to offer his unauthorized assistance. He passed the pursuit without activating
17 lights or sirens and when he reached Cardiff, he deployed another spike strip which was
18 again unsuccessful and again resulted in another officer radioing in an "assault with a
19 deadly weapon" call.

20     28.   Defendant RITCHIE once again entered the pursuit and passed it until he
21 reached Lomas Santa Fe in Solana Beach. At that point, he observed CHP officers make
22 another reckless pit manuever, this time temporarily disabling the decedent's truck by
23 forcing it into a dirt easement off the sidewalk. Defendant RITCHIE immediately rushed
24 over to contain the decedent, ramming the decedent's truck with such force that RITCHIE's
25 airbag deployed.

26     29.   Defendant RITCHIE immediately went to the passenger side of the
27 decedent's truck with his gun drawn. The passenger side window was partially down and
28 RITCHIE was able to make eye contact with the decedent. RITCHIE had no belief that the

decedent was armed and he was able to observe his hands on the steering wheel. He ordered the decedent to turn off the vehicle and put his hands up.

30. RITCHIE became angered when MEDINA did not follow his orders. RITCHIE made a conscious decision not to use any other means of apprehension or detention other than his gun. In a show of force, RITCHIE fired his gun at the truck's rear tire which deflated. RITCHIE again aimed his gun at the decedent and gave orders and again the decedent did not comply. Getting angrier, RITCHIE fired another round at the front tire. RITCHIE again aimed his weapon at the decedent and gave commands which were ignored as the decedent tried to extricate his truck from between two patrol cars. RITCHIE fired again.

31. By this time, several officers and deputies had taken up positions around the decedent's truck and in close proximity to it. For the last time in the decedent's lifetime, RITCHIE's reckless provoking actions would create a chain reaction of similar unreasoned hasty and irresponsible actions by three other fellow law enforcement officers culminating in the unjustified use of deadly force.

32. After the third warning shot was fired by Defendant RITCHIE and he moved out of the way of the decedent's truck as it was extricated from between the patrol cars, CHP officers FENTON and NAVA and deputy sheriffs TAFT and RITCHIE in an excessive show of deadly force fired over 37 rounds of gunfire at the decedent. These officers and deputies continued to fire even as the decedent's truck no longer posed an alleged perceived threat to the safety of any officers. There is no conclusive determination as to which of these four officers and deputies fired the fatal round.

33. Decedent MEDINA was alive when he was pulled from his truck and first aid was administered by the officers. He died shortly after the paramedics arrived at the scene.

34. Shortly after the shooting, the SDSD disseminated numerous public reports containing a partial account of events designed to exonerate the officers from any responsibility for the unjustified and reckless killing of MEDINA and to deflect criticism or

scrutiny of the professional practices of the law enforcement agencies involved, regardless of the true facts underlying the tragic and unnecessary death of MEDINA.

**FIRST CLAIM FOR DAMAGES**
**42 U.S.C. §1983: Violation of Decedent's Rights**
**EXCESSIVE FORCE**
[Against all Defendants]

35. Plaintiff realleges and incorporates by reference paragraphs 1 through 34 as though fully set forth in this cause of action.

36. Defendants, acting under color of state law, used unnecessary, unjustified excessive force in shooting and killing MEDINA, thereby depriving Decedent of certain constitutionally protected rights, including but not limited to the right to be free from the use of excessive force by law enforcement officers as guaranteed by the fourth amendment to the United States Constitution. This unreasonable and excessive force constituted an unlawful seizure, in violation of Decedent's rights as guaranteed by the fourth amendment to the United States Constitution.

37. As a proximate result of the conduct of defendants, Decedent MEDINA was injured in mind and body, and incurred general damages for the deprivation of his constitutional rights.

38. Defendants acted in reckless and callous disregard for the constitutional rights of Decedent, and with willful oppression and malice. Plaintiff therefore seeks an award of punitive damages against these individual Defendants.

**SECOND CLAIM FOR DAMAGES**
**42 U.S.C. §1983: Violation of Plaintiff's Rights**
**EXCESSIVE FORCE**
[Against all Defendants]

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 38 as though fully set forth in this cause of action.

40. The killing of MEDINA without lawful justification constituted an arbitrary abuse of police power under color of state law, committed with deliberate indifference to

the rights of Decedent's family members. The conduct of Defendants, therefore violated the liberty interest of Plaintiff JENNIFER MEDINA, in her personal capacity, in maintaining her familial relationship with Decedent, an interest which is protected by the fourteenth amendment to the United States Constitution.

41. As a proximate result of the Defendants' violations of Plaintiff's fourteenth amendment rights, Plaintiffs suffered the loss of the love, companionship, society, comfort, services, and moral and financial support fo the Decedent, and her sense of security, dignity and pride as a citizen of the United States of America.

42. Defendants acted in reckless and callous disregard for the constitutional rights of Plaintiff, and will willful oppression and malice. Plaintiff therefore seeks an award of punitive damages against these individual defendants.

**THIRD CLAIM FOR DAMAGES**
**42 U.S.C. §1983**
**UNLAWFUL POLICIES, CUSTOMS or HABITS**
[Against Defendants County of San Diego,
City of Encinitas and City of Solana Beach]

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as though fully set forth in this cause of action.

44. At the time deadly force was employed against MEDINA, Defendants knowingly and deliberately fostered, maintained and condoned a policy, practice and custom or otherwise acted in a manner that was deliberately indifferent to the lives and liberty of persons such as decedent MEDINA. Said policy, practice, custom and/or actions included, without limitation, failing to provide adequate hiring, training, retention, supervision, discipline and control of deputies and officers with respect to the constitutionally appropriate use of force, including deadly force and with respect to employing safe and constitutionally permissible means of performing necessary police functions short of lethal force.

///

///

45. Further deliberate indifference is manifested in the failure to change, correct, revoke or rescind these policies, procedures, customs and practices despite prior knowledge by defendants and their policymakers of indistinguishably similar incidents involving improper use of racial profiling as an illegitimate substitute for probable cause, improper pursuit tactics and the use of unjustified and unreasonable deadly force.

46. Deliberate indifference is also evidenced by Defendants failure to identify and more closely supervise or retrain deputies and officers who improperly use excessive and/or deadly force that pose an unreasonable risk of death or great bodily harm.

47. By consciously and deliberately overlooking the acts of misconduct and publicly approving the acts of misconduct by subordinate officers, Defendants, established a defacto custom and practice of condoning and ratifying such misconduct, thereby establishing a tolerated pattern of constitutional violations.

48. The policies, practices, acts and omissions of Defendants, the deliberate indifference of such Defendants, and the adoption and ratification of the misconduct described herein were the moving forces behind the violations of constitutional rights and the resulting damages suffered by Plaintiff and Decedent.

49. By reason of the aforementioned acts and omissions of Defendants, Plaintiff was required to retain counsel to institute and prosecute the within action and Plaintiff requests payment by Defendants of a reasonable sum as and for attorneys fees pursuant to 42 U.S.C. §1988.

///
///
///
///
///
///

## PRAYER FOR RELIEF

Wherefore, PLAINTIFF prays for judgment against Defendants and each of them as follows;

1. For general damages in an amount to be proven at trial;
2. For special damages in an amount to be proven at trial;
3. For punitive damages against the individually-named defendants;
4. For attorneys' fees pursuant to 42 U.S.C. §1988;
5. For costs of suit incurred herein; and
6. For such other and further relief as the court may deem just and proper.

Dated: 7/11/08

Dena M. Acosta, Esq.,
Anton C. Gerschler, Esq. Attorneys for
Plaintiff JENNIFER MEDINA

```
         UNITED STATES
         DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA
           SAN DIEGO DIVISION

        # 152929      - TC

         July 11, 2008
           15:17:10


        Civ Fil Non-Pris
USAO #.: 08CV1252
Judge..: JOHN A HOUSTON
Amount.:                  $350.00 CK
Check#.: BC6096



        Total->   $350.00


FROM: CIVIL FILING
```

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DEFENDANTS

FILED
08 JUL 11 PM 3:14
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

'08 CV 1252 JAH RBB

(b) County of Residence of First Listed Plaintiff   San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Dena M. Acosta, Esq., North County Law Firm,
914-A N. Coast Highway 101, Encinitas, CA 92024

Attorneys (If Known)
Ricky R. Sanchez, Esq. San Diego County Counsel
1600 Pacific Highway, Room 355, San Diego, CA 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS — PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 1983

Brief description of cause:
Police Misconduct: Excessive Use of Deadly Force

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE   None in Federal Court
DOCKET NUMBER

DATE   07/11/2008
SIGNATURE OF ATTORNEY OF RECORD   Dena M. Acosta

**FOR OFFICE USE ONLY**

RECEIPT # 152989   AMOUNT $350   APPLYING IFP   JUDGE   MAG. JUDGE

FAC 7/11/08