Elaine L. Heine
Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

Attorney for Plaintiffs
Arlene and Robert Medina

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MEDINA, an individual,<br><br>       Plaintiff,<br><br>     v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>       Defendants. | No. 08-CV-1252-BAS (RBB)<br>(Consolidated with 08-CV-1395-BAS (RBB))<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT OR ALTERNATIVELY SUMMARY ADJUDICATION** |
| ARLENE SUSAN MEDINA an individual,<br><br>ROBERT LEO MEDINA an individual,<br><br>       Plaintiffs,<br><br>     v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>       Defendants. | Date:         August 25, 2014<br>Time:         10:30 a.m.<br>Courtroom:    4B<br>District Judge:  Cynthia A. Bashant<br>Magistrate Judge:  Ruben H. Brooks<br><br>Trial Date:     None Set |

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

PAGES

I.    INTRODUCTION ……………………………………………..4

II.   THE COURT MUST CONSIDER THE FACTS IN THE LIGHT
      MOST FAVORABLE TO THE PLAINTIFFS………………………4

      A.   The Court must Assume Defendants Fired At Mr. Medina
           Prior to the Time His Truck Broke Free From the Patrol Vehicles…… 5

      B.   The Court Must Find that Deputy Ritchie's Credibility
           is an Issue of Fact for the Jury……………………………………… 6

           1.   Dr. Firestone Testified that the Forensic Evidence
                Proves that Ritchie's Rendition of the Events is a Lie……………. 6

           2.   No Other Officer or Deputy Ever Saw Deputy Ritchie
                at the Passenger Side of Mr. Medina's Truck………………… 6

           3.   No Other Officer or Deputy Ever Saw Deputy Ritchie Shoot
                Out the Tires of the Truck……………………………………… 8

           4.   Only Deputy Ritchie Claims There Were Two Volleys
                of Gunfire…………………………………………………… 9

           5.   The Tires of the Truck Were Never Examined to
                Determine Whether They Were Shot Out by Deputy Ritchie…….. 9

      C.   Testimony of Percipient Witnesses Proves Mr. Medina's
           Truck Was Still Pinned in by the Patrol Vehicles when
           Defendants Were Firing at Mr. Medina…………………………… 9

      D.   Officers Nava, Fenton and Deputy Ritchie All Claim They
           Heard Gunfire (Other Than Their Own) Prior to Shooting at
           Mr. Medina's Truck; They Cannot All Be Correct…………………… 11

      E.   Officer Fenton's Credibility and Rendition of the Events is an
           Issue of Fact For the Jury to Determine………………………… 11

      F.   Officer Nava's Credibility and Rendition of the Events is an
           Issue of Fact for the Jury to Determine………………………… 12

III.  PLAINTIFFS' CONSTITUTIONAL RIGHTS WERE VIOLATED
      AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
      IMMUNITY BASED ON THE FACTS PRESENTED IN THE
      LIGHT MOST FAVORABLE TO PLAINTIFFS……………………14

      A.   The Facts of the Medina Case can be Distinguished from the facts
           of the Plumhoff Case and Therefore the Defendants' Use of
           Force Was Not Objectively Reasonable………………………… 16

      B.   Cases Wherein the Court Has Determined Excessive Use
           of Force Violates Constitutional Rights………………………...17

           1.   First Inquiry Under Plumhoff: Was a Constitutional Right
                Violated?.................................................................................. 17

           2.   The Second Inquiry Under Plumhoff: If a Constitutional Right
                Was Violated, Was That Constitutional Right Well Established
                at the Time of the Incident?................................................... 22

      C.   This Case Can be Distinguished from Brosseau v Haugen
           543 U.S. 194 (2004)…………………………………………………24

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

IV.    **MONELL CLAIM**………………………………………………25
V.    **CONCLUSION**…………………………………..………25

# TABLE OF AUTHORITIES

*Acosta v. City & County of S.F., 83 F.3d 1143 (9th Cir. 1996)* ………………………23

*A.D. v. California Highway Patrol, 712 F.3d 446(9th Cir. 2013)*………………......18

*Adams v. Speers, 473 F.3d 989 (9th Cir. 2007)  Patrol, 712 F.3d 446
    (9th Cir. 2013)* ………………………………………………………………24

*Bingue v Prunchak*, 512 F.3d 1169, 1177 (2008)………………………………… 15

Brosseau v Haugen 543 U.S. 194 (2004)…………………………………………24

*Champommier v. U.S., case no. cv11-10538 (C.D.CA. 2013)* ………………………21

*Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756 (2d Cir. 2003)*……………17, 22

*Curnow v Ridecrest Police*, 952 F.2d 321 at 325…………………………………14

*Estate of Alan Kosakoff v City of San Diego* (2011) 460 Fed. Appx. 65;
    2011 U.S. App. LEXIS 23983 at 654………………………………………15, 23

*Graham v Connor* (1989) 490 U.S. 386……………………………………………15

*Hayes v. County of San Diego*, 638 F.3d 688 (9th Cir. 2011)…………………………5

*Kirby v. Duva, 530 F.3d 475 (6th Cir. 2008)*……………………………………19

*McCaslin v. Wilkins, 17 F.Supp.2d 840 (W.D.Ark. 1998)* ………………………17

*Murray-Ruhl v. Passinault, 246 Fed.Appx. 338 (6th Cir. 2007)*……………………19

*O'Bert Ex. Rel. Estate of O'Bert v. Vargo* 331 F.3d 29 (2nd Cir. 2003)
    *cert. denied*, 513 U.S. 820 (1994)…………………………………………4

*Plumhoff v Rickard*, 572 U.S. ___(2014), 2014 U.S. LEXIS 3816…………………4

*Porter v Osborn* (9th Cir. 2008) 546 F.3d 1131………………………………………14, 16

*Randall v. Williamson, 211 Fed.Appx. 565 (9th Cir. 2006)*…………………………21

*Remato v. City of Phoenix, 2011 WL 3648268 (D. Ariz. 2011)*……………………20

*Rico v. County of San Diego, 2013 U.S. Dist. LEXIS 85588 (S.D. Cal. 2013)*……...18

*Sigley v. City of Parma Heights, 437 F.3d 527 (6th Cir. 2006)*………………………20, 22

*Slusarchuck v. Hoff, 228 F.Supp.2d 1007 (D.Minn. 2002)*…………………………18

*Smith v. Cupp, 430 F.3d 766 (6th Cir. 2005*………………………………………22

*Tennessee v Garner* (1985) 471 U.S. 1, 11…………………………………………16

*Tubar v. Clift, 453 F.Supp.2d 1252 (W.D.Wash. 2006)* …………………………23

*Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003)* ………………………………… 19, 22

*Wilkie v Robbins*, 551 U.S. 537, 543……………………………………………4

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

# I.

## INTRODUCTION

Plaintiffs Robert and Arlene Medina join in the statement of facts and law as set forth in Plaintiff Jennifer Medina's Points and Authorities. All evidence submitted in support of the motions is submitted jointly. Therefore, Plaintiff will not re-allege all facts set forth in Jennifer Medina's Points and Authorities but incorporate the same though set forth herein. This action arises from the pursuit and subsequent shooting death of Robert J. Medina brought pursuant to 42 U.S. C. § 1983. Plaintiffs are Decedent's wife Jennifer Medina and Decedent's parents Robert and Arlene Medina ("Decedent's Parents"). Plaintiffs based their claims upon allegations that officers from the San Diego Sheriff's Department ("SDSD") and officers from the California Highway Patrol ("CHP") shot and killed Decedent in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution. The defendants who created the dangerous and deadly situation now seek to be immunized from their conduct.

The California State Highway Patrol the San Diego Sheriff's Department and Oceanside Police Department all had multiple vehicles involved in the pursuit. Fourteen law enforcement personnel were witnesses to the pursuit and nine of those witnesses were present at the scene of the shooting. Plaintiffs have taken the depositions of the nine officers at the scene of the shooting. Please see Appendix A for a summary and deposition references of the location of the officers on the scene and what they witnessed.

## II.
## THE COURT MUST CONSIDER THE FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS

In *Plumhoff v Rickard*, 572 U.S. ___(2014), 2014 U.S. LEXIS 3816 the court reiterated that the facts must be viewed, "in the light most favorable to the nonmoving party" *Plumhoff* citing *Wilkie v Robbins*, 551 U.S. 537, 543. As the Court explained in *O'Bert Ex. Rel. Estate of O'Bert v. Vargo* 331 F.3d 29 (2nd Cir. 2003) *cert. denied*, 513 U.S. 820 (1994):

> "…. given the difficult problem posed by a suit for the use of deadly force, in which "the witness most likely to contradict [the police officer's] story--the person shot dead--is unable to testify[,] …. the court may not simply accept what may be a self-serving

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

account by the police officer…the court should "examine all the evidence to determine whether the officers' story is consistent with other known facts… [citations omitted.]

Summary judgment in excessive force cases should be granted sparingly because the reasonableness of force used is ordinarily a question of fact for the jury. *Hayes v. County of San Diego*, 638 F.3d 688 (9th Cir. 2011).

**A. The Court must Assume Defendants Fired At Mr. Medina Prior to the Time His Truck Broke Free From the Patrol Vehicles.**

Dr. Firestone, plaintiff's ballistics expert who performed a trajectory analysis concluded from the evidence he examined that Deputy Ritchie fired most of his seven shots at Mr. Medina's truck before the truck had broken free and was moving in a westerly direction. (Firestone Depo. P. 175, l. 6-13; P. 181, l. 8-14) Deputy Ritchie could not have fired the 7 shots in the time it would take Medina's truck to go 10 feet in Deputy Ritchie's direction. (Firestone Depo P. 140, l. 15-25) Human perception reaction time is approximately 1.5 seconds, which gave Deputy Ritchie no time to react and fire 7 shots if the truck was in fact moving toward him. (Firestone Depo P. 208-209, l. 7-11) "With the firearms used in this incident, one round can be fired in 1/3 of a second, three to four rounds in a second and 7-8 rounds in 2-3 seconds." (Roger Clark, Plaintiffs' police procedures expert, Declaration P. 3 l. 13-15) A truck accelerating at 10 miles per hour can cover 10 feet in a fraction of a second. Officer Nava reported that the truck accelerated at a high rate of speed. (Nava Depo P. 189, l. 8-25) Seven rounds cannot be fired in a fraction of a second. Therefore, Ritchie shots could not have been fired at the truck when it was moving forward in an unobstructed path toward Ritchie.

Dr. Firestone concluded from the ballistics evidence that Officer Nava fired his first three shots prior to the truck breaking free. (Firestone Depo P. 188, l. 13-24) Therefore, for the purpose of this Summary Judgment motion, the court must consider that defendants fired at Mr. Medina when it was boxed in by patrol vehicles. The forensic evidence proves that Defendants shot at Mr. Medina prior to the point in time a reasonable officer would have a legitimate fear of death or serious bodily injury, as the truck was not moving towards any officer in an unobstructed path when they began firing at it.

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

**B. The Court Must Find that Deputy Ritchie's Credibility is an Issue of Fact for the Jury.**

**1. Dr. Firestone Testified that the Forensic Evidence Proves that Ritchie's Rendition of the Events is a Lie.**

Dr. Firestone relied on location of cartridges, witness statements, photos of the scene and Deputy Ritchie's' logical path to travel to make his determination that Ritchie fired 7 shots while facing the front of the truck and standing directly in its subsequent forward path of travel. (Firestone Depo P. 119, l. 13-25; P. 221, l. 3-20) Dr. Firestone concluded that Officer Ritchie fired seven shots in front of the truck from a distance of 10 feet. (Firestone Depo P. 135, l 1-2) Based on the location of the shell casings, Ritchie was standing on the driver's side of the pickup as the truck passed him, (Firestone Depo P. 120, l. 9-12) not on the passenger side as he claims.

**2. No Other Officer or Deputy Ever Saw Deputy Ritchie at the Passenger Side of Mr. Medina's Truck.**

Deputy Ritchie claims he approached Mr. Medina's truck from the passenger side of the truck and made eye contact with Medina through the passenger side window while the truck was "rooster tailing" in the dirt. (Ritchie Depo P. 74, l. 17-23; P. 186, l. 15-19; P. 225, l. 5-8; P. 367, l. 1-9; P.369, l.15-24; P. 370, l. 15-23) Ritchie then claims that while standing on the passenger side of the truck, he fired one round into the right rear tire and then one round into the right front tire. (Ritchie Depo P. 85, l. 17-21) Ritchie claims he fired these rounds from a position behind the passenger side mirror of the truck. (Ritchie Depo P. 248, l. 16-19) After placing himself by the passenger side window of Medina's truck, Ritchie then claims he came around to the front of the truck. (Ritchie Depo P. 225, l. 9-21) Later in his deposition, Ritchie contradicted himself, claiming he backed away from the truck after firing at the tires. (Ritchie P. 251, l. 5-17)

Ritchie describes Mr. Medina's truck rocking forward and backward more than twice. (Ritchie P. 264, l. 1-11) Ritchie then describes the tires of the truck "canted" toward (pointed toward the left) him so that he could see the tire treads. (Ritchie P. 376-377, l. 5-6) Deputy Ritchie describes Mr. Medina turning the steering wheel to the left. (Ritchie P. 376-377, l. 9-6) Nava testified he was looking at the truck when the wheels turned and saw the wheels turn toward the right, not the left. (Nava Depo P. 155-157, l. 13-19)

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

Deputy Ritchie states that when he first perceived the truck coming toward him he was not in the roadway, but doesn't recall exactly where he was. (Ritchie P. 268, l. 12-18) Later in the deposition he claims he was standing in the dirt/sidewalk area. (Ritchie P. 378, l. 13-24) Ritchie claims that despite his close proximity to the CHP vehicle to the north of the truck and a light pole on the sidewalk (See MAIT diagrams of the scene) he doesn't recall seeing the CHP vehicle or bumping into the light pole. (Ritchie Depo P. 379, l 8-12) Ritchie next states he fired his third round at Mr. Medina's truck when the truck started to maintain some forward momentum from the sidewalk area toward him into the street. (Ritchie Depo P. 272, l. 11-14) *Ritchie then admits he fired his third round (the first at the driver of the truck) after he had moved out of the way of the Mr. Medina's truck.* (Ritchie P. 273, l. 17-19) He describes an officer to the *right* of him, behind him, firing at Mr. Medina's truck prior to the time he fired his third shot. (Ritchie Depo P. 276, l. 20-24. P. 298, l. 7) He describes hearing two shots from over his right shoulder prior to the time he fired his third shot. Ritchie (P. 332, l. 8-15) No officer testified that they fired shots from the right of Ritchie. (Nava Depo P. 162, l. 1-20) It is important to note that Deputy Ritchie admitted to reading his statement over 20 times prior to providing deposition testimony and constantly referred to the statement to refresh his recollection of the events. (Ritchie Depo P. 371-372, l. 18-7)

Officer Carson located in the northbound lane observing the scene (Carson Depo P. 35, l. 1-5) did not see any officer or deputy on the passenger side of the truck giving commands and shooting out the tires of the truck. (Carson Depo P. 101, l. 13) Deputy Barrios, 10-15 feet south of Mr. Medina's truck, never saw Ritchie move to the passenger side of the truck. (Barrios Depo P. 116, l. 8-12; P 67, l. 12-18) Officer Nava who was to the left and behind officer Ritchie, maintained a view of Ritchie from the point in time Ritchie exited his vehicle to the time of the shooting, and never saw Ritchie approach the passenger side of Mr. Medina's vehicle. (Nava Depo P. 121, l. 13-18; P. 122, l. 1-14; P. 125, l. 19-23; P. 140, l. 13-20; 130, l. 14-20) Nava testified that Ritchie took a stance at the left front of his patrol vehicle. (Nava Depo P. 121, l. 13-18) Nava testified he never saw Ritchie on the passenger side of Mr. Medina's truck. (Nava Depo P. 329, l. 2) Fenton, driving southbound to box Mr. Medina's truck in from the north, did

7

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

not see any deputies or officers to the north of the truck but did see Ritchie standing to the left of his patrol vehicle. (Fenton Depo P. 132, l. 1-23) Officer Martin, the driver of Fenton's patrol vehicle, similarly saw Ritchie standing towards the left side of his patrol car but did not see anybody on the passenger side of the truck. (Martin Depo P. 59, l. 2-10; P. 61, l. 22-15; P. 76, l. 1-5; P. 104, l. 9-11)

Deputy Ritchie testified that when the truck started driving in an unobstructed path toward him he was not in the roadway but on the curb in the grass or gravel. He describes seeing the front of the truck coming at him at this point. (Ritchie Depo, P. 269, l. 7-17) As an inspection of the MAIT diagram, testimony of the witnesses and the forensic analysis reveals, Ritchie could not have been in this position. First, there is simply no area that he could be standing on the curb wherein another witness would not have seen him in that position (please refer to cites above) Ritchie would have been directly in Officer Nava's and Officer Fenton's line of sight and possibly their line of fire. There was no area on the sidewalk to stand due to Fenton's vehicle, the light post and the presence of Fenton and Nava in that area. Lastly, the tire treads as depicted on MAIT diagram clearly indicate the truck traveled in a straight line from east to west, no turning is depicted.

### 3. No Other Officer or Deputy Ever Saw Deputy Ritchie Shoot Out the Tires of the Truck

Officer Carson did not see any officer or deputy on the passenger side of the truck giving commands and shooting out the tires of the truck. (Carson Depo P. 101, l. 13) Deputy Barrios testified the tires did not appear to be shot out or flat and did not see Ritchie shoot out the front or rear tires. (Barrios Depo P. 68-69, l. 12-12; P. 116, l. 19-21.) Officer Nava describes maintaining eye contact on Ritchie from the time he exited his vehicle to the time of the shooting and maintains Ritchie never moved from the location directly to the left front of his patrol vehicle. (Nava Depo P. 121-159) Officer Nava saw the right rear tiring spinning, kicking up dirt and at that time, the tire was not flat. (Nava Depo P. 179, l. 2-16) Officer Martin did not have any concerns as he was approaching Medina's truck that he would run over any deputies because there was nobody north of Medina's truck. (Martin Depo P. 61, l. 22-25)

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

### 4. Only Deputy Ritchie Claims There Were Two Volleys of Gunfire

Officer Carson only heard one volley of shots. (Carson Depo P. 102, l. 1-6) Deputy Mendoza only heard one volley. (Mendoza Depo P. 89, l. 12-15) Deputy Barrios stated the shots sounded like one continuous volley. (Mendoza Depo P. 84, l. 5-11) Officer Fenton remembers hearing more than one round fired before the time that he began firing. (Fenton Depo P. 144, l. 12-15) Officer Martin only recalls hearing one burst/volley of gunshots, with no delay in between shots; thinks that the gunfire lasted no more than ten seconds. (Martin Depo P. 70-71, l. 23-18)

### 5. The Tires of the Truck Were Never Examined to Determine Whether They Were Shot Out by Deputy Ritchie.

Defendants' Expert Erin Mulligan was aware that one of the deputies had claimed to have shot out the passenger side tires, but she did not perform an analysis or the tire or rule out that statement. (Mulligan Depo P. 49, l.11-25) She did not perform this analysis because Defendants determined that it would not have been the "best use of their time". (Mulligan Depo P. 50, l. 1-9)

Deputy Ritchie's testimony is not collaborated by any other witness testimony and is not supported by the forensic evidence. This places Ritchie's credibility and the events as he describes them at issue. Ritchie then claims he shot at Mr. Medina because he feared for his life despite the fact that he testified he moved out of the way of the truck prior to firing his third round at the truck. (Ritchie P. 273, l. 17-19) For the purpose of this summary judgment motion, the court must consider that Ritchie is lying about his position on the passenger side of the truck and the fact that he shot out the tires of the truck and the fact the truck was coming directly at him. Instead he was directly in front of Mr. Medina's truck firing 7 shots at Mr. Medina and his truck while it was pinned in by the patrol vehicles. Ritchie never feared for his life but shot at Mr. Medina due to his rage and frustration and his desire to "teach him a lesson".

### C. Testimony of Percipient Witnesses Proves Mr. Medina's Truck Was Still Pinned in by the Patrol Vehicles when Defendants Were Firing at Mr. Medina.

Officer Martin (not a defendant in the case) testified he drove up onto the sidewalk/median and boxed Medina in from the north. (Martin Depo P. 62, l. 4-6) His vehicle made contact with

9

Medina's truck, at the passenger side door and fender area; Medina's truck was in constant motion, forward and back, but he doesn't remember if it was in motion when he hit it. (Martin Depo P. 65, l. 3-16) He does not remember if Mr. Medina reversed and went forward any additional times after his patrol car made contact with the truck, but does recall that he was "still trying to get out" (Martin Depo P. 65, l. 16-25) Immediately after stopping his car, Martin was trying to get his door open, which was jammed. (Martin Depo P. 67, l. 8-22) He *heard gunfire when he was leaning down kicking his door open. (*Martin Depo P. 67-68, l. 23-5)

When Officer Martin pulled up to the truck, he looked straight through his windshield and could see through Medina's passenger side window. (Martin Depo P. 118-119, l. 19-6) **He *could not see Medina's vehicle when he was kicking his door as he was leaning down. The last time he observed Medina's truck was right before he leaned down to kick his door open and it was still trying to break free from his vehicle and the deputy's vehicle that was in front of it. (*Martin Depo P. 68, l. 8-18) *The last time he saw Medina's truck, he was looking at the passenger door.* (Martin Depo P. 68, l. 19-25) Officer Martin's testimony proves that gunfire erupted when Mr. Medina's vehicle was pinned in and on the sidewalk and prior to it breaking free as Officer Martin saw Medina's passenger door immediately in front of him on the sidewalk and then immediately ducked down when hearing gunfire.

Deputy Barrios describes seeing Mr. Medina from 10-15 south of driver's side of the truck (Barrios Depo P. 68-69, l. 12-12) He observed Medina ramming Ritchie's car, turning wheels to right as if trying to get back on NB 101. (Barrios Depo P. 68, l. 2-11) Ritchie was right in front of Medina's truck when it was rocking back and forth. (Barrios Depo P. 82, l. 6-9) He saw a CHP officer to left of Ritchie. Barrios Saw Fenton and Martin arrive and pin in Medina from the north and saw a CHP officer take a position at the passenger window of Medina's truck. (Barrios Depo P. 69, l. 13-24.) As he was walking to Medina's truck toward the passenger window he saw Ritchie move a little to the left. (Barrios Depo P. 70, l. 15-19) When shots were fired (whizzing over his head) he ducked, turned and ran. (Barrios Depo P. 85, l. 3-9) He described the shots as one continuous volley. (Barrios Depo P. 84, l. 5-11) Officer Barrio's testimony proves that gunfire erupted when Mr. Medina's vehicle was pinned in and on the sidewalk and prior to it

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

breaking free, as Deputy Barrios was at the driver's door when he heard bullets whizzing over his head.

Both Deputy Barrios and Officer Martin never saw Ritchie on the passenger side of Mr. Medina's truck but did observe Ritchie at the left front fender of his patrol vehicle with his gun drawn. They both describe hearing one volley of shots when Mr. Medina's truck was still pinned in by law enforcement vehicles. Considering the evidence in the light most favorable to the plaintiffs, the court must consider that the defendants started shooting at Mr. Medina prior to the time his truck was traveling forward unobstructed by patrol vehicles.

**D.  Officers Nava, Fenton and Deputy Ritchie All Claim They Heard Gunfire (Other Than Their Own) Prior to Shooting at Mr. Medina's Truck; They Cannot All Be Correct.**

Officer Nava testified that as he was pulling the trigger to fire he remembers hearing one other shot but does not know where that shot came from. (Nava Depo P. 160, l. 3-14; P. 293, l. 19-25)  Officer Fenton testified that as he was getting out of his car, he heard gunfire; didn't know where the gunfire was coming from so he took cover. (Fenton Depo P. 139, l. 13-23) Deputy Ritchie  describes an officer to the right of him (no one was to the right of him), behind him, firing at Mr. Medina's truck prior to the time he fired his third shot (the first he claims he shot at the driver). (Ritchie Depo P. 276, l. 20-24;  P. 298, l. 7; P. 332, l. 8-15)

All of the officers claim they did not fire the first shot at Mr. Medina. This cannot be the case as the first shot had to have been fired by one of them. Therefore, all of the officer's credibility is at issue.

**E.  Officer Fenton's Credibility and Rendition of the Events is an Issue of Fact For the Jury to Determine.**

Barrios, standing 10-15 feet to the south of the drivers side of Mr. Medina's truck, saw Officer Fenton and Martin arrive and pin in Mr. Medina's truck from the north.  Deputy Barrios then testified that he saw Officer Fenton take a position at the passenger window of Mr. Medina's truck and moved back and forth with the rocking of the truck. (Barrios Depo P. 69, l. 13-24)  Barrios describes Fenton ("the CHP officer") as at Mr. Medina's passenger door when he stated shooting. (Barrios Depo P. 97-98, l. 28-7) Barrios turned and ran when because he was in

11

the CHP officer's crossfire directly across from him and heard him firing his weapon. (Barrios Depo P. 88, l. 13-24) Barrios heard one continuous volley and was first alerted to the shooting by hearing bullets "whizz" over his head. (Barrios Depo P. 84-85, l. 5-9)

Fenton's rendition of events is completely different. He admits to yelling "Let's end this, let's end this" less than 5 minutes prior to the shooting. P. 120-121, l. 13-10. He then describes arriving at the scene pinning in Mr. Medina's truck from the north. (Fenton Depo P. 134, l. 8-18) He describes exiting his patrol car and dropping to his knees behind the passenger door. (Fenton Depo P. 139, l. 2-8) Fenton testified that as he was getting out of his car he heard gunfire, didn't know where it was coming from so took cover. (Fenton Depo P. 139, l. 13-23) Fenton testified he never went to the passenger side of Mr. Medina's truck before it broke out of containment and never pointed his weapon at the truck when it was rocking back and forth. (Fenton Depo P. 145, l. 1-5) Officer Martin, Fenton's driver, testified that Fenton got out of their vehicle "pretty quick" when it pinned in Mr. Medina's truck. (Martin Depo P. 66-67, l. 17-2)

There is reason to believe Deputy Barrios version of the events, which describe the CHP officer aiming his weapon at Mr. Medina and moving back and forth with the truck as it was attempting to extract itself from the patrol cars. Barrios then describes becoming aware of shooting when bullets were whizzing over his head as he stood on the sidewalk 10-15 feet south of Mr. Medina's truck. The "whizzing" of bullets was Fenton was shooting at Mr. Medina prior to Mr. Medina's truck breaking out of containment, not after he heard shots and the truck broke away as he claims. Fenton's shots went directly into the passenger side of Mr. Medina's truck as Dr. Firestone's trajectory analysis revealed. (See Firestone Trajectory analysis and report). Therefore, Officer Fenton's credibility and rendition of the events is an issue of fact for the jury.

### F. Officer Nava's Credibility and Rendition of the Events is an Issue of Fact for the Jury to Determine.

Officer Nava places himself 2-3 arm's lengths away from Deputy Ritchie who was standing at the front driver's side of Ritchie's patrol vehicle. (Nava Depo P. 139, l. 1-3) At that time, it appeared that Medina was trying to free himself; Nava had been trained to not place himself in close proximity to someone who was trying to escape in a moving vehicle, but at that

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

time, did not worry about his safety. (Nava Depo P. 132, l. 1-10) In fact, in deposition Officer Nava acknowledged he was aware of the CHP policy that prohibits a CHP officer from standing in front of a vehicle, intentionally causing a circumstance that would cause the use of lethal force. (Nava Depo P. 353, l. 14-18) When the truck started going back and forth, Nava moved to his left a little bit, because he was startled, but still felt safe because he was not in the trajectory of the truck and it didn't appear that the truck could get out. (Nava Depo P. 134, l. 1-16) He was not concerned that Medina might have a weapon because he could see both of his hands – one on the steering wheel and one on the transmission shifter that was next to the steering wheel. (Nava Depo P. 151, l. 4-20)

Nava describes the left front of the truck start to climb up and over the patrol car, something no other deputy saw. (Nava Depo P. 158-159, l. 21-2). He feared for Deputy Ritchie's life because he states Ritchie was in the trajectory of the truck. H shot at the passenger windshield of Mr. Medina's truck as he was moving. (Nava Depo P. 163, l. 10-25) He describes hearing a shot before his. (Nava Depo P. 293, l. 19-25) He specifically states he did not see Ritchie do anything to get out of peril or avoid the truck. (Nava Depo P. 306, l. 15-20) Interestingly enough, Nava testified that he never looked around for Ritchie after the shooting to see if he was "ok". (Nava Depo, P. 198, l. 9-24) In fact none of the officers who allegedly feared that Ritchie was in imminent danger of being killed or seriously wounded, inquired as to his whereabouts or whether he was injured after the shooting stopped.

Nava placed himself in front of Mr. Medina's vehicle without cover, contrary to department policy. (See Declaration of Roger Clark paragraph 5-18; Nava Depo P. 353, l. 14-18) Nava testified he was aware of the CHP policy that prohibits a CHP officer from standing in front of a vehicle intentionally causing a circumstance that would cause the need to use lethal force, but did not believe that policy was violated because he didn't place himself in front of the truck. (Nava Depo P. 353, l. 14-25) He testified Ritchie did not violate the aforementioned policy either because he was off to the side of the truck as well, and the only way that he could have been run over by the truck was if it turned its wheels, like it did. (Nava Depo P. 354, l. 1-13)

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

Nava testified he was aware that unpredictability could be a factor when dealing with a DUI suspect. (Nava Depo P. 355, l. 7)

Nava violated department policy by standing in close proximity to Mr. Medina's truck as he was trying to break out of containment. He was not concerned that Medina had a weapon and believed him to be a suspected DUI. His testimony that Ritchie was in danger of serious bodily injury or death must be considered along with the fact that neither officer moved out of the way of the truck despite the fact that it was clear the truck was trying to break out of containment, hence the situation couldn't have been perceived to be that dangerous. Instead, the testimony of Nava and other witnesses could lead a jury to believe the officers were intentionally causing a circumstance that would give them the excuse to use lethal force, as opposed to having a reasonably objective fear of the same.

### III.
### PLAINTIFFS' CONSTITUTIONAL RIGHTS WERE VIOLATED AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BASED ON THE FACTS PRESENTED IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS

Plaintiffs' fourteenth amendment rights to familial association with their son were violated when defendants intentionally and maliciously shot at and killed Mr. Medina prior to the time his vehicle had broken free from the patrol vehicles. This interest is protected by the substantive due process clause of the Fourteenth Amendment. *Curnow v Ridecrest Police,* 952 F.2d 321 at 325.

In *Porter v Osborn* (9th Cir. 2008) 546 F.3d 1131 the Court held that the "purpose to harm" rather than "deliberate indifference" standard is the proper standard of culpability to apply to an officer's actions in a 14th Amendment claim. The *Porter* court went on to discuss cases in which the officer's conduct reveals a purpose to harm and explained that these types of intentions or actions by officers would not shield them from liability even though they were ultimately effectuating an arrest. These circumstanced included situations wherein; 1) the officers created the very emergency they resorted to deadly force to resolve, 2) particularly objectionable conduct and 3) "where force against a suspect is meant only to "teach him a lesson" or to "get even"" *Porter,* supra at 1140- 1141. In these contexts, the courts are faced

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

with an intense factual analysis taking into account the supposed public threat and the officer's basis for his actions.

As described above and in Plaintiff Jennifer Medina's Points and Authorities, Defendants shot Mr. Medina without any legitimate law enforcement objective with the purpose to harm him at the point in time when the situation was steadily de-escalating. At the time of the shooting the pursuit had ended and Mr. Medina's truck was confined by 2 patrol vehicles a light pole, surrounded by additional patrol vehicles and 14 officers, reportedly had two flat tires, and, there were no civilians on the roadway. Defendants were frustrated (Ritchie "frustrated" Depo P. 260-261, l. 10-6; Fenton "not happy", "let's end this" (Fenton Depo P. 116, l. 1-6, P. 120-121, l. 13-10) with Mr. Medina's failure to comply with their commands and refusal to surrender himself to the authorities, and shot him prior to any point where they felt he was an imminent threat to them. This satisfies the "purpose to harm standard" as set forth in *Bingue v Prunchak*, 512 F.3d 1169, 1177 (2008).

Law enforcement had attempted to stop Mr. Medina for a suspected DUI, observed he was unarmed and had participated in a slow speed chase that did not come in contact with any civilians in the area. "Under *Porter*, a jury may consider the manner in which officers needlessly caused a confrontation to escalate in determining whether the officers acted with a purpose to harm. *Estate of Alan Kosakoff v City of San Diego* (2011) 460 Fed. Appx. 65; 2011 U.S. App. LEXIS 23983 at 654.

In *Graham v Connor* (1989) 490 U.S. 386 the court balanced the nature and quality of the intrusion against the governmental interests at stake given the totality of the circumstances. The court analyzed the question from the perspective of a reasonable officer on the scene. Roger Clark, plaintiffs' police procedures expert, repeatedly states in his declaration in paragraphs 5-18, that the defendants did not have an objectively reasonable fear that Mr. Medina posed a lethal danger. Mr. Clark provides examples of their conduct and relies on the ballistic evidence analyzed by Dr. Firestone and the statements and depositions of witnesses in this case. Mr. Clark testified that defendants failed to follow protocol by not taking cover, standing directly in front of a vehicle attempting to extract itself from the patrol vehicles pinning it in, escalating the

15

situation by their actions in the pursuit and at the scene of the shooting, failing to effectively communicate with Mr. Medina and shooting at his truck and person to stop the vehicle, contrary to professional standards. (Clark Declaration paragraphs 5-18) "The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Tennessee v Garner* (1985) 471 U.S. 1, 11.

### A. The Facts of the Medina Case can be Distinguished from the facts of the Plumhoff Case and Therefore the Defendants' Use of Force Was Not Objectively Reasonable.

*Plumhoff v Rickard* 572 U.S. ___ (2014) followed the above cited cases and determined that the events of that case justified the officer's conduct. In the *Plumhoff* case, the decedent led law enforcement on a high-speed chase attaining speeds of 100mph, swerving through traffic and endangering civilians on the roadway. Prior to the chase, law enforcement had noticed an indentation "the size of a head" on the windshield of the decedent's car that led them to believe someone had been struck by the car. The deceased had sped off instead of cooperating with the stop. During the chase, the decedent passed more than two dozen vehicles. At the time of the shooting, the deceased was actually driving away unobstructed by patrol vehicles. Deputies shot at the Rickard because they felt he would pose a deadly threat for others on the road.

The instant action is not a case wherein law enforcement was attempting to terminate a dangerous high-speed car chase that threatened the lives of innocent bystanders. Mr. Medina led law enforcement on a "slow speed pursuit" (Taft Depo P. 140, l. 14-22) The pursuit speed was 40-45 mph (Taft Depo 156, l. 1-5) The speed of pursuit did not appear to be unsafe. (Barrios Depo P. 5-18) Virtually no civilians were in the locations of the pursuit or at the point where the shooting occurred. Mr. Medina had avoided multiple spike strips, wherein 4 patrol vehicles were unable to do so and recovered from over 5 PIT maneuvers indicating he was most likely not intoxicated. Mr. Medina had not aimed his patrol vehicle at any officers contrary to Officer Fenton's testimony (Ritchie Depo P. 143, l. 10-17) Mr. Medina's truck had not broken free of the patrol vehicles blocking it from moving forward unobstructed at the time the first shots were fired. (Firestone Depo P. 180, l. 4-13) In excess of forty shots were fired at Mr. Medina and his vehicle. (See, Dr. Firestone Declaration and attached Report)

16

In the instant action, since there were no bystanders or civilians in the area, Mr. Medina would not pose a threat to them despite the fact it appeared he was intent on resuming his flight. Secondly, his vehicle allegedly had two flat tires (Ritchie Depo P. 85, l. 1-11) which would have prevented him from traveling any substantial distance and therefore ended any threat of continued flight. Thirdly, no law enforcement officer testified Mr. Medina had a weapon. Most importantly, Mr. Medina was not aiming his vehicle at a law enforcement personnel when the shooting began and had not aimed it at a single officer all night despite many opportunities to do so. (Ritchie Depo P. 143, l. 10-17) Therefore, law enforcement did not act reasonably in their use of deadly force as there could not have been a fear of imminent bodily injury or death. Instead, defendants created an "emergency situation" by standing directly in front of Mr. Medina's truck when he was trying to break out of confinement so that they had an excuse to teach Mr. Medina a lesson by shooting him.

**B. Cases Wherein the Court Has Determined Excessive Use of Force Violates Constitutional Rights.**

1.      **First Inquiry Under Plumhoff: Was a Constitutional Right Was Violated?**

*McCaslin v. Wilkins, 17 F.Supp.2d 840 (W.D.Ark. 1998)* Plaintiffs successfully asserted a claim under the Fourth Amendment and survived a motion for summary judgment. The decedent was fatally shot by a police officer when decedent allegedly attempted to run down officer, who had pursued him in high-speed chase, after decedent's vehicle left roadway.

*Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756 (2d Cir. 2003)* The Court ruled that the plaintiff's Constitutional rights were violated (and that the right was clearly established at the time, destroying a qualified immunity defense). An officer stopped a car with two occupants on the side of a highway. After failing to apprehend the driver, who fled on foot, the officer returned to his car, to find that that passenger in the car had moved to the driver seat and was driving toward him. The officer fired two times at the car, with the second shot killing the driver. Plaintiff's version of the facts suggest that the car was not driving directly at the officer, and that the officer was standing well off to the side of the car when he fired both shots at the driver.

17

*Slusarchuck v. Hoff, 228 F.Supp.2d 1007 (D.Minn. 2002)* The court found that a Constitutional right was violated. Officers pursued a vehicle that they believed (wrongfully) was being driven by an individual with a "PC Pickup" to his name, giving them justification to stop him. The suspect failed to yield, and led the officers on a slow speed pursuit, which ended in a crash that killed the driver of a third vehicle. Citing County of *Sacramento v. Lewis* (523 U.S. 833 (1998)), the court noted that "conduct intended to injure in some way is unjustifiable by any government interest and is the sort of official action most likely to rise to the conscience-shocking level." 1015. The court applied the "Intent-to-Harm/Worsen the Legal Plight" standard that was developed in *Lewis*, and stressed that it is to be applied "to all §1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender." *Lewis* at 871. These legal principals should be applied by the court to the present case.

*Rico v. County of San Diego, 2013 U.S. Dist. LEXIS 85588 (S.D. Cal. 2013)* The Court denied defendant's motion for summary judgment. This case involved a short pursuit that ended at the end of a dirt road. Plaintiff's vehicle stopped next to the officer's vehicle, but quickly backed up and started accelerating forward toward another dirt road, in an effort to get away. The defendant officer exited his vehicle with his weapon drawn and fired 16 shots in a matter of 3.5 seconds at the driver's side of the plaintiff's car as the plaintiff was fleeing the scene. Both plaintiff, who was driving at the time, and passenger was hit.

*A.D. v. California Highway Patrol, 712 F.3d 446 (9th Cir. 2013)* Decedent was pursued by CHP on the freeway and on city streets, until ultimately running into a fence in a cul de sac. The Officer ordered decedent to exit the vehicle; she refused and repeatedly said "F*** you!" After decedent rammed a patrol car several times in an attempt to escape, CHP officer fired 12 rounds and emptied his magazine. "By March 23, 2006—the day that Markgraf shot Eklund—it was clearly established that a police officer, who acts with the purpose to harm unrelated to a legitimate law enforcement objective, violates the rights protected by the Fourteenth Amendment due process clause." In *A.D.* as in the Medina action, the officer's factual account was at odds with some physical evidence, as well as testimony of other officers at the scene, and could be

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

considered a "key contested issue." First, Markgraf's (the officer that fired the shots) intent in shooting Eklund was at issue: he testified that he fired because he was afraid the decedent would succeed in getting past the parked vehicles and run over other officers at the scene, who he said he saw standing behind the vehicle; other officers testified that they were all on the sidewalk, well out of the way, and did not feel threatened. Second, the physical location of decedent's car was not consistent with Markgraf's testimony. Both of these factors played a seemingly large role in the district court's decision to deny summary judgment based on qualified immunity.

*Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003)* The court ruled that the plaintiff's Constitutional right was violated (and that the right was clearly established at the time, destroying a qualified immunity defense). In this case, deputies attempted to use a "rolling road block." While still pursuing the truck, traveling at approx. 70 MPH, one of the deputies fired 3 rounds without warning, in an attempt to disable the truck end the pursuit. One of the shots the passenger, plaintiff, and paralyzed him. It was found that the deputy violated plaintiff's Fourth Amend. rights.

*Kirby v. Duva, 530 F.3d 475 (6th Cir. 2008)* The court ruled that the plaintiff's Constitutional right was violated (and that the right was clearly established at the time, destroying a qualified immunity defense), and denied a motion for summary judgment. This case did not involve a high-speed pursuit, and the decedent was a known drug dealer who regularly armed himself. The incident involved several officers, all of whom have slightly different stories. "Seeing the Ranger move towards Buckley and hearing gunshots, Carrier and Duva also opened fire on Kirby. Both officers testified that they had seen Buckley slip behind the Ranger and feared that he would be run over as that vehicle reversed." *Supra* at 479. "Under [plaintiff's] version, the Ranger was moving slowly and in a non-aggressive manner, could not have hit any of the officers, and was stationary at the time of the shooting. Consequently, reasonable police officers in defendants' positions would not have believed that Kirby 'pose[d] a threat of serious physical harm, either to the officer[s] or to others.'" *Supra* at 482.

*Murray-Ruhl v. Passinault, 246 Fed.Appx. 338 (6th Cir. 2007)* The court ruled that the plaintiff's Constitutional right was violated. The officer's account of the events differs greatly

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

from the plaintiff's, who is supported by an eyewitness who was a passenger in the vehicle during the incident. The decedent, who had been hiding from police in his truck with one passenger, had been blocked in from behind by a patrol car. Decedent started his truck, and because of the patrol car blocking him in from the rear, drove forward and took the only exit available to him out of the alley. The officer claimed that the decedent drove the truck directly at him, even after giving multiple orders to stop the truck, and that he fired in self-defense (he fired 12 rounds, the majority of which entered through the rear of the truck as the truck was driving away). The plaintiff's version of the facts suggest that the officer only gave one order to stop, and fired his weapon immediately after giving that order without waiting for a response. Plaintiff's version also reveals that the truck drove by the officer, only coming within 8 feet of him, and continued down the alley, where there were no other officers or members of the public in the area at the time.

*Sigley v. City of Parma Heights, 437 F.3d 527 (6th Cir. 2006)* Grant of Summary Judgment was reversed by US Court of Appeals (District Court had incorrectly analyzed issue in the light most favorable to defendant's version of the facts). This case did not involve a high-speed pursuit, and the decedent was a known drug dealer who regularly armed himself. Decedent was blocked in by police while parked in a parking lot. Defendant claims that as decedent was trying to break free of the patrol cars and escape, he accelerated toward him. Defendant claims that he fired in self-defense. Plaintiff claims that the defendant chased after the decedent as he drove away and shot at him through his open driver's side window.

*Remato v. City of Phoenix, 2011 WL 3648268 (D. Ariz. 2011)* The court concluded that a Constitutional right was violated, and that the officer's actions were not reasonable, and he could therefore not assert a qualified immunity defense. Decedent and friends went to a convenient store for a "beer run." They were blocked in by a patrol vehicle that had observed the situation. The decedent, who was driving the vehicle, tried to drive away and escape from the officers. One officer had exited his vehicle and was standing near the front of the driver's side of the vehicle. As the vehicle began to drive away, the officer fired 2 rounds into the driver's side window, killing the decedent.

20

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

*Randall v. Williamson, 211 Fed.Appx. 565 (9th Cir. 2006)* Ninth Circuit ruled that a grant of summary judgment for qualified immunity by the District Court was inappropriate, and therefore reversed. Officers had been engaged in a pursuit with decedent following several non-violent traffic violations by decedent. Officers set up a roadblock to stop decedent. As decedent approached the roadblock at relatively slow speeds, and potentially even stopped prior to reaching the roadblock, an officer opened fire on the vehicle, killing the decedent.

*Champommier v. U.S., case no. cv11-10538 (C.D.CA. 2013)* The court concluded that no reasonable officer could conclude that there was an immediate threat to life, therefore making the use of deadly force unjustified and unreasonable. The validity and accuracy of one of the officer's (the officer that first fired at the decedent's vehicle) accounts of the event was seriously called into question: *One major consideration for the court in their analysis was that the officer who fired his weapon was not able to articulate any specific facts or reasons about how firing his weapon at the driver of the vehicle would have helped the officer that he perceived to be in danger:* "Throughout his testimony, Special Agent LoPresti gave only one reason for shooting Champommier: "To protect Deputy Brewster from severe injury or death. In spite of this insistence, Special Agent LoPresti did not articulate at trial exactly how shooting the driver of a moving vehicle while another officer was on the hood would be helpful to the besieged officer." p.7, ¶51. The court also noted that the use of a vehicle as an assaultive weapon does not per se justify the use of deadly force by officers: "Nor do standard police practices support the automatic use of deadly force even in the case of the use of a vehicle as an assaultive weapon. For example, the Los Angeles Sheriff's Department maintains a policy that states that the use of a firearm against a moving motor vehicle is almost always ineffective and that of an assaultive motor vehicle does not presumptively justify the use of deadly force." p.7, ¶53. This, the general ineffectualness of such shots, was a major consideration for the court in deciding that the use of deadly force was unreasonable and unjustified.

It is clear from this body of analogous case law that the defendants who purposefully shot Mr. Medina intending to harm him and put and end to the pursuit despite the fact they were not under the threat of imminent danger, violated the constitutional rights or Plaintiffs.

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487

2.     **The Second Inquiry Under Plumhoff: If a Constitutional Right Was Violated, Was That Constitutional Right Well Established at the Time of the Incident?**

*Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003)* Court ruled that the deputy could not assert a qualified immunity defense when the facts are viewed in a light most favorable to the plaintiff. "Taking the facts as alleged by Vaughan, an objectively reasonable officer in Deputy Cox's position could not have believed that he was entitled to use deadly force to apprehend Vaughan and Rayson . . . Applying Garner in a common-sense way, a reasonable officer would have known that firing into the cabin of a pickup truck, traveling at approximately 80 miles per hour on Interstate 85 in the morning, would transform the risk of an accident on the highway into a virtual certainty." *Supra,* at 1332-33.

*Sigley v. City of Parma Heights, 437 F.3d 527 (6th Cir. 2006)* Court ruled that the officer was not entitled to a qualified immunity defense. "[V]iewing the facts in a light most favorable to the Plaintiff, Mockler was running behind Davis' car, out of danger, and Davis drove in a manner to avoid others on the scene in an attempt to flee. Accepting these facts as true, Mockler would have fair notice that shooting Davis in the back when he did not pose an immediate threat to other officers was unlawful." *Supra,* at 537.

*Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756 (2d Cir. 2003)* Court ruled that the defendant officer could not assert a qualified immunity defense. Relying heavily on *County of Sacramento v. Lewis, 523* U.S. 833 (1998), the court ruled that the law was clear and well established at the time.

*Smith v. Cupp, 430 F.3d 766 (6th Cir. 2005)* The Court of Appeals affirmed the District Court's decision to deny the assertion of a qualified immunity defense by the defendant officer. "[T]he facts, taken in the light most favorable to the plaintiffs, demonstrate that Dunn's use of deadly force violated Smith's constitutional rights. The particular right at issue was clearly established. Thus, Dunn is not entitled to qualified immunity." *Supra,* at 773. In this case, the officer had arrested the decedent and placed him in the back seat of his patrol car. While the officer was out of his car talking to a tow truck driver, the decedent managed to get into the driver's seat of the patrol car and accelerate the car toward the exit of the parking lot. According

22

to plaintiff's version of the facts, the officer ran toward the car and fired four rounds into the car, killing the decedent.

*Estate of Kosakoff v. City of San Diego, 2010 U.S. Dist. LEXIS 42113 (S.D. Cal. 2010)* The Court concluded that "[a]s early as 1996, the Ninth Circuit noted that 'the law governing when an offer may use deadly force against an unarmed fleeing suspect was clearly established." *Acosta v. City & County of S.F., 83 F.3d 1143, 1147 (9th Cir. 1996).* It was noted that defendant's credibility is a factual issue in dispute: "The record would justify a reasonable jury finding that the defendants deliberately misstated the facts to seek to justify what they knew to be an unreasonable case of deadly force. Such a credibility finding would support a reasonable inference that the defendant officers acted, not in self-defense, but out of anger, malice, or a desire to inflict extrajudicial punishment on a person who had refused to yield and had driven recklessly some time before the arrival at the garage. The shooters both testified with certainty to facts contradicted by physical evidence and neutral eye-witnesses." In this decision the court stated that two officers' version of the events were not possible. Such is so in the instant action.

*Acosta v. City & County of S.F., 83 F.3d 1143 (9th Cir. 1996)* Court ruled that the defendant officer was not entitled to a qualified immunity defense. The defendant officer, who was in plainclothes at the time of the incident, observed the decedent steal a woman's purse. The officer drew his weapon and pursued the decedent on foot, and saw him run into a waiting car. The officer fired 2 shots into the car, killing the driver of the car – decedent plaintiff. "Because the law governing 'shooting to kill' a fleeing suspect is clearly established and because a reasonable officer could not have reasonably believed that shooting at the driver of the slowly moving car was lawful, we hold that Yawczak is not entitled to qualified immunity." 1148.

*Tubar v. Clift, 453 F.Supp.2d 1252 (W.D.Wash. 2006)* The court held that the defendant officer was not entitled to qualified immunity. Defendant officer's factual account of the event was partially disproved by physical evidence; however, this was not a key factor for the court in their decision. Instead, the court stated that the plaintiff introduced sufficient evidence to prove that a reasonable officer in the situation would not have used deadly force, and the law was clearly established at the time of the incident.

23

*Adams v. Speers, 473 F.3d 989 (9th Cir. 2007)* The Ninth Circuit held that the officer was not entitled to summary judgment based on qualified immunity. The plaintiff was observed by law enforcement officers to be driving erratically, and led officers on a pursuit; several officers pursued the plaintiff's vehicle. A CHP officer, sitting in his vehicle on the side of the road, heard of the chase via his radio, and, without announcing his identity or his intentions to the other officers involved, attempted to ram the suspect vehicle (he missed). The CHP officer then joined the pursuit and made himself the lead car in the pursuit. Later in the pursuit, the CHP officer successfully rammed the suspect vehicle, causing it to spin out onto the shoulder. Patrol units surrounded the suspect vehicle. As the suspect vehicle was inching back and forth, trying to find an avenue of escape, the CHP officer exited his vehicle, placed himself in front of the suspect vehicle, and without warning fired 6 shots at the driver, killing the driver. The court held that "this case falls within the obvious: the absence of warning and the lack of danger to the shooter or others distinguish the case from *Cole, Smith*, and *Brosseau.* On these facts, Officer Speers was not entitled to qualified immunity."

### C. This Case Can be Distinguished from *Brosseau v Haugen 543 U.S. 194 (2004).*

The Plumhoff Court stated that in order to defeat immunity the plaintiffs had to distinguish their case from the facts of *Brosseau*. In *Brosseau*, Haugen, the suspect, had a criminal history known to the defendants who were aware of his identity when making contact with him. There was a warrant out for the Haugen's arrest. Civilians, including a 3-year-old girl, were in the immediate vicinity at the time of the incident. The officer only fired one shot at the suspect.

In the instant action, defendants were unaware of Mr. Medina's identity and history. Defendants were not aware of any crime Mr. Medina had committed besides a possible DUI and the later incorrectly allegedly 245 on an peace officer. No other civilians or civilian vehicles were in the immediate vicinity at the time of the shooting. Defendant fired a total of 40 plus rounds at Mr. Medina. This case is clearly distinguishable from Brosseau based on the testimony of the witnesses.

//

24

# IV.

## MONELL CLAIM

Plaintiffs Arelene and Robert Medina join in Plaintiff Jennifer Medinas Points and Authorities with regards to the Plaintiffs' Monell Claim.

# V.

## CONCLUSION

The officers created the very emergency they resorted to deadly force to resolve. Mr. Medina was being pursued by 14 law enforcement officers on a slow speed pursuit due to his failure to yield. He was unarmed and there were no civilians on the roadway. The officers engaged in unsanctioned tactics in the pursuit and containment of Mr. Medina. When the situation was de-escalating and he was surrounded by 9 officers and multiple patrol vehicles and pinned in by two patrol vehicles and a light post, he was shot by defendants. The forensic evidence, which cannot lie, proves Deputy Ritchie's testimony is impossible and self serving. Contradicting testimony from both defendant and percipient witnesses calls into question the testimony of the defendants who testified they shot in fear of Deputy Ritchie's life. Instead, it is clear the force used against Mr. Medina was meant to "teach him a lesson" or to "get even".

The record justifies a reasonable jury finding that the defendants deliberately misstated the facts to seek to justify what they knew to be an unreasonable use of deadly force. Such a credibility finding would support a reasonable inference that the defendant officers acted, not in self-defense, but out of anger, malice, or a desire to inflict extrajudicial punishment on a person who had refused to yield and abide by their commands.

Summary Judgment should not be granted to the Defendants, as their actions were not reasonable but rather intended to purposely harm the decedent, violating plaintiffs' constitutional rights.

Dated: August 10, 2014                    ___S/ Elaine Heine_____
                                          Elaine L. Heine
                                          Attorney for Plaintiffs Arelene and Robert
                                          Medina

Attorney at Law
SB#151669
11622 El Camino Real, Ste. 100
San Diego, CA 92130
(858)764-2487