1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10   JENNIFER MEDINA, an individual,)    Civil No. 08cv1252 BAS(RBB)
                                     )
11                  Plaintiff,       )    ORDER GRANTING IN PART AND
                                     )    DENYING IN PART PLAINTIFF
12   v.                              )    JENNIFER MEDINA'S MOTION TO
                                     )    COMPEL DISCOVERY OF
13   COUNTY OF SAN DIEGO; et al.,    )    COUNTY/SHERIFF DEPARTMENT AND
                                     )    CALIFORNIA HIGHWAY PATROL
14                  Defendants.      )    DOCUMENTS [ECF NO. 99]
     _____)
15   ARLENE SUSAN MEDINA, an         )
     individual; ROBERT LEO MEDINA,  )
16   an individual,                  )
                                     )
17                  Plaintiffs,      )
                                     )
18   v.                              )
                                     )
19   COUNTY OF SAN DIEGO; et al.,    )
                                     )
20                  Defendants.      )
     _____)
21        On May 2, 2014, Plaintiff Jennifer Medina filed a combined

22   Motion to Compel Discovery of County/Sheriff Department and

23   California Highway Patrol Documents [ECF No. 99].  Defendants'

24   opposition briefs were filed on May 19, 2014 [ECF Nos. 105, 108].

25   Plaintiff did not file a reply.  The hearing on the motion was set

26   for July 7, 2014.  The Court determined the matter to be suitable

27   for resolution without oral argument, submitted the motion on the

28   parties' papers pursuant to the Local Civil Rule 7.1(d), and

                                     1

vacated the motion hearing.  (Mins., July 1, 2014, ECF No. 115.)
For the following reasons, the Court GRANTS in part and DENIES in
part Plaintiff's Motion to Compel.

## I.  BACKGROUND

This civil rights case arises out of a vehicle pursuit and
subsequent shooting death of Robert J. Medina on November 16, 2006.
(Consolidated Compl. 5, ECF No. 57.)  Plaintiffs are his widow,
Jennifer Medina, and parents, Robert and Arlene Medina.  (Id. at
3.)  Robert Medina was a 22-year-old active duty Marine who had
recently returned from a tour of duty in Iraq and suffered from
post-traumatic stress syndrome.  (Id. at 5.)  At approximately 1:00
a.m. on November 16, 2006, Medina left his home after arguing with
his wife.  (Id.)  He was observed driving at a slow rate of speed
on Highway I-5 near the City of Oceanside and weaving in his lane.
California Highway Patrol ("CHP") officers attempted to pull him
over on suspicion of driving under the influence.  (Id. at 5-6.)
When Medina failed to stop, dispatch was notified and a slow speed
pursuit followed.  (Id. at 6-7.)

Eventually, at least five patrol cars joined the pursuit.
(Id. at 7.)  The pursuit escalated at the intersection of Leucadia
Boulevard and Highway 101 in Encinitas.  (Id.)  By then, San Diego
County Deputy Sheriff Mark Ritchie intervened in the pursuit and
deployed a spike strip, allegedly without properly coordinating his
actions with the pursuing officers.  (Id.)  When Medina swerved in
Ritchie's direction to avoid the spike strip, CHP Officer Timothy
Fenton radioed in the situation as an assault with a deadly weapon.
(Id. at 7-8.)  Plaintiffs allege that this created a false and
heightened threat alert to other law enforcement officers.  (Id. at

8.)  Ritchie allegedly continued to pursue Medina without proper radio communication with the CHP officers.  (Id.)  Another pursuing officer reported an "assault with a deadly weapon" after Medina swerved again to avoid another spike strip.  (Id.)  As a result of Ritchie's tactics, two CHP patrol vehicles became disabled; nonetheless, the pursuit continued.  (Id.)

Plaintiffs allege Fenton engaged in a Pursuit Immobilization Technique ("PIT") maneuver that added further elements of danger to an otherwise nonthreatening slow-speed pursuit.  (Id. at 8-9.)  As Medina drove past the patrol car, Fenton allegedly told his partner Martin, "Let's end this.  Let's end this."  (Id.)  As a result of the PIT maneuver by Fenton, Medina's truck was forced off the road and up against a chainlink fence in Solana Beach.  (Id.)  Ritchie then rammed the front end of the truck with his patrol car to pin it against the fence.  (Id. at 9.)  Fenton and Martin blocked the truck with their vehicle against the right-side passenger side of the truck.  (Id.)  Plaintiffs also claim that Medina's truck abutted a concrete lamp post "which prohibited the truck's movement to the right and protected officers taking up positions on the passenger side of the truck."  (Id.)  Defendant Fenton was seen standing by his patrol car with his gun drawn and giving commands. (Id. at 12.)

Plaintiffs allege that the truck was pinned by the two patrol cars and not moving when the officers began firing.  (Id. at 14.) The officers allegedly could see Medina's hands and observed him unarmed prior to firing their weapons.  (Id. at 13.)  Defendant Ritchie allegedly fired eleven rounds while he was in front of Medina's truck, and fired more rounds after he moved behind his

3

patrol car. (Id. at 14.)  Plaintiffs argue that Ritchie was not in
danger of being run over by Medina but still fired directly at him
in an attempt to kill Medina. (Id. at 15.)  Plaintiffs allege that
Defendants Fenton, CHP Officer Leo Nava, and Deputy Sheriff Karla
Taft also fired shots at Medina's truck. (Id.)  In total, the
officers fired thirty-seven rounds. (Id. at 16.)  Medina was alive
when he was pulled from his truck but died shortly after the
paramedics arrived at the scene. (Id.)

On the basis of these allegations, Plaintiffs claim that
Defendants CHP Officers Leo Nava and Tim Fenton and San Diego
Sheriff's Department Deputies Mark Ritchie and Karla Taft used
excessive force and engaged in unlawful policies, customs, or
habits, in violation of Plaintiffs' and Medina's constitutional
rights.  Specifically, Plaintiffs allege Defendants used
"unnecessary, unjustified excessive force" when they shot and
killed Medina in violation of his constitutional rights. (Id. at
17.)  This, according to the consolidated complaint, constituted an
unlawful seizure in violation of the Fourth Amendment. (Id.)

The following claims presently remain in the case: (1)
Jennifer Medina's claim for excessive force in violation of
Medina's rights under the Fourth Amendment against Taft, Ritchie,
Nava, and Fenton; (2) Jennifer Medina's claim for loss of
companionship in violation of her rights under the Fourteenth
Amendment as against Ritchie, Nava, and Fenton; (3) Jennifer
Medina's claim pursuant to Monell v. Dep't of Soc. Servs. of New
York, 436 U.S. 658 (1978), for unlawful policies, customs, or
habits against the County of San Diego; and (4) Medina's parents'
claim for excessive force in violation of the right of association

1  under the Fourteenth Amendment as against Ritchie, Nava, and

2  Fenton.

3                          **II.  DISCUSSION**

4       Plaintiff Jennifer Medina moves to compel Defendant County of

5  San Diego and Defendants Nava and Fenton to produce six categories

6  of documents[1] relating to each of the individual Defendants:  (1)

7  performance evaluations and training records; (2) "fitness for

8  duty" evaluations and "return to work" reports; (3) internal

9  affairs reports and investigations of other incidents or

10 complaints; (4) discipline, reprimand or remedial training records;

11 (5) Civil Service Commission records; and (6) Critical Incident

12 Review Board and CHP investigative records and reports.  (Pl.'s

13 Mot. Compel Attach. #1 Mem. P. & A. 2-3, ECF No. 99.)

14      The documents pertaining to Deputies Ritchie and Taft were

15 requested in document requests addressed to Defendant County of San

16 Diego.  (Id. Attach. #2 Decl. Acosta 2.)  For Defendants Fenton and

17 Nava, the requested items are described in requests for production

18 served on these two Defendants.  (Id.)  In their oppositions, the

19 responding Defendants opposed disclosure, claiming the documents

20 are shielded by the official information privilege, are subject to

21 privacy rights, or seek irrelevant information.  (Def. San Diego

22 Cnty.'s Opp'n 2, 4, ECF No. 108; Joint Opp'n Defs. Nava & Fenton 5,

23 ECF No. 105.)

24 //

25 //

26 //

27 _____

28      [1] Plaintiff's motion involves thirty-six document requests.

**A.  Legal Standards**

    **1.  Relevance**

The scope of discovery under the Federal Rules of Civil Procedure is broad.  See, e.g., Kelly v. City of San Jose, 114 F.R.D. 653, 668 (N.D. Cal. 1987).  Federal Rule of Civil Procedure 26 states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998).

"[I]n the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them." Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (citing Kelly, 114 F.R.D. at 667-68).  Thus, "it should be 'sufficient for a plaintiff to show how information of the kind that is likely to be in the files could lead to admissible evidence.'" Id.  Courts have found performance evaluations relevant to excessive force claims.  Id. at 615; Hampton v. City of San Diego, 147 F.R.D. 227, 229 (S.D. Cal. 1993).  Also, performance

1  evaluation records proving the police department had notice or

2  ratified the officers' actions may be relevant to show unlawful

3  policies, customs, or habits as part of Plaintiffs' <u>Monell</u> claim.

4  <u>See</u> <u>Hampton</u>, 147 F.R.D. at 229.

5          **2.  Official information privilege**

6          "Federal common law recognizes a qualified privilege for

7  official information." <u>Sanchez v. City of Santa Ana</u>, 936 F.2d

8  1027, 1033 (9th Cir. 1990) (citing <u>Kerr v. United States Dist. Ct.</u>

9  <u>for the N. Dist. of Cal.</u>, 511 F.2d 192, 198 (9th Cir. 1975)).  The

10 discoverability of official documents should be determined under

11 the "balancing approach that is moderately pre-weighted in favor of

12 disclosure." <u>Kelly</u>, 114 F.R.D. at 661.  The party asserting the

13 privilege must properly invoke the privilege by making a

14 "substantial threshold showing." <u>Id.</u> at 669.

15         The party must file an objection and submit a declaration or

16 affidavit from a responsible official with personal knowledge of

17 the matters attested to by the official.  <u>Id.</u>  The affidavit or

18 declaration must include (1) an affirmation that the agency has

19 generated or collected the requested material and that it has

20 maintained its confidentiality, (2) a statement that the material

21 has been personally reviewed by the official, (3) a description of

22 the governmental or privacy interests that would be threatened by

23 disclosure of the material to the plaintiff or plaintiff's

24 attorney, (4) a description of how disclosure under a protective

25 order would create a substantial risk of harm to those interests,

26 and (5) a projection of the harm to the threatened interest or

27 interests if disclosure were made.  <u>Id.</u> at 670.  Requiring the

28 defendant to make a "substantial threshold showing" allows the

1  plaintiff to assess the defendant's privilege assertions and decide

2  whether they should be challenged.  Id.

3      If a plaintiff challenges defendant's invocation of the

4  official information privilege, the court "must weigh the potential

5  benefits of disclosure against the potential disadvantages" to

6  determine whether the privilege applies.  Sanchez, 936 F.2d at

7  1033-34.  Courts consider the following factors when balancing the

8  interests of the parties in the context of an official information

9  privilege claim:

>     (1)  The extent to which disclosure will thwart
>     governmental processes by discouraging citizens from
>     giving the government information.
>
>     (2)  The impact upon persons who have given
>     information of having their identities disclosed.
>
>     (3)  The degree to which government self-evaluation
>     and consequent program improvement will be chilled by
>     disclosure.
>
>     (4)  Whether the information sought is factual data
>     or evaluative summary.
>
>     (5)  Whether the party seeking the discovery is an
>     actual or potential defendant in any criminal proceeding
>     either pending or reasonably likely to follow from the
>     incident in question.
>
>     (6)  Whether the police investigation has been
>     completed.
>
>     (7)  Whether any interdepartmental disciplinary
>     proceedings have arisen or may arise from the
>     investigation.
>
>     (8)  Whether the plaintiff's suit is non-frivolous
>     and brought in good faith.
>
>     (9)  Whether the information sought is available
>     through other discovery or from other sources.
>
>     (10)  The importance of the information sought to
>     the plaintiff's case.

8

1  <u>Kelly</u>, 114 F.R.D. at 663 (citing <u>Frankenhauser v. Rizzo</u>, 59 F.R.D.

2  339 (E.D. Pa. 1973)).  "If the court concludes, based on this

3  review [of the affidavit and both parties' submissions], that

4  defendants' submissions are not sufficient to meet its threshold

5  burdens, the court will order disclosure of the material." <u>Id.</u> at

6  671; <u>see also</u> <u>Hampton</u>, 147 F.R.D. at 231.  But if the defendants'

7  submissions are sufficient to meet the threshold burden, the court

8  may order supplemental briefing and conduct an <u>in</u> <u>camera</u> review of

9  the withheld documents to decide whether they should be produced.

10 <u>See</u> <u>Kelly</u>, 114 F.R.D. at 671.

11          **3.  Privacy**

12      With respect to privacy rights, federal courts recognize a

13 constitutionally-based right of privacy that may be asserted in

14 response to discovery requests.  <u>Soto</u>, 162 F.R.D. at 616.  The

15 resolution of a party's privacy objection involves balancing the

16 need for the information sought against the privacy right asserted.

17 <u>Id.</u> (citing <u>Perry v. State Farm Fire & Cas. Co.</u>, 734 F.2d 1441,

18 1447 (11th Cir. 1984)).  "In the context of the disclosure of

19 police files, courts have recognized that privacy rights are not

20 inconsequential." <u>Soto</u>, 162 F.R.D. at 616.  "[F]ederal courts

21 generally should give some weight to privacy rights that are

22 protected by state constitutions or state statutes." <u>Kelly</u>, 114

23 F.R.D. at 656.  "However, these privacy interests must be balanced

24 against the great weight afforded to federal law in civil rights

25 cases against police departments." <u>Soto</u>, 162 F.R.D. at 616.

26 //

27 //

28 //

9

**B.   Document Requests to Defendant San Diego County**

    1.   <u>Performance evaluations and training records</u>
       <u>(document requests 10, 11, 12, & 13)</u>

In her request for production of documents served on Defendant County of San Diego, Plaintiff seeks performance evaluations for Defendants Ritchie (request number ten) and Taft (request number eleven) for the years 1996 through 2006.  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at 4, ECF No. 99.)  Plaintiff also requests "[a]ll records relating to training received . . . and courses attended . . . for the years 1996 through 2006, including but not limited to current P.O.S.T. certificate, status of mandatory P.O.S.T. training, firearms and qualification dates, scores and remediation" for the years 1996 through 2006 for Ritchie (request number twelve) and Taft (request number thirteen).  (<u>Id.</u>)

In response to these requests, Defendant County stated:

> Responding Party objects on the grounds that personnel materials are protected from disclosure because they contain information pertaining to remedial measures and disciplinary recommendations; they are protected from disclosure by the deliberative process, self-critical analysis, required reports, and official information privileges.  Disclosure of personnel, medical, and similar files is an unwarranted invasion of privacy under Penal Code section 832.8(f), CA Constitution, Article 1, Section 1; 5 U.S.C. 552a, and the Freedom of Information Act.  They are protected from disclosure under the Federal Privacy Act.  They are records complied [sic] for law enforcement purposes which are exempt from disclosure.  They are privileged materials subject to disclosure only under CA Penal Code § 832.7 and Evidence Code § 1043.  The material is irrelevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.  Responsive documents will only be released pursuant to a court order.  Subject to and without waiving said objection, Responding Party responds as follows: See privilege log and declarations concerning the privilege log produced herewith.

1   (Id. Ex. 3, at 9-12.[2])  For Deputy Ritchie, Defendant San Diego

2   County identified the following files: (1) a personnel file, (2)

3   internal affairs file, (3) internal affairs file no. 2012-150.1,

4   (4) internal affairs file no. 2007-008.2, (5) personnel file - post

5   certificate(s), (6) personnel file - CIRB, and (7) personnel file -

6   worker's comp.  (Id. Ex. 4, at 1-7, 12-13.)  For Deputy Taft, the

7   County identified four files: (1) a personnel file, (2) internal

8   affairs file, (3) personnel file - post certificate(s), and (4)

9   personnel file - CIRB.  (Id. at 8-13.)  Each listed file also

10  includes a brief description of the documents contained in the file

11  and identifies the parties asserting claims of privilege.  (Id. at

12  1-13.)

13      A motion to compel may be brought where responses to Rule 34

14  requests for production are insufficient.  See Fed. R. Civ. P.

15  37(a)(3)(B)(iv).  When the discovery sought appears relevant on its

16  face, "'[t]he party resisting discovery bears the burden of

17  establishing lack of relevance by demonstrating that the requested

18  discovery either does not come within the broad scope of relevance

19  or is of such marginal relevance that the potential harm occasioned

20  by discovery would outweigh the ordinary presumption in favor of

21  broad disclosure.'"  Pulsecard, Inc. v. Discover Card Servs., Inc.,

22  168 F.R.D. 295, 309 (D. Kan. 1996) (citation omitted).

23      Plaintiff argues in her Motion to Compel that performance

24  evaluations and training records should be produced because they

25  are relevant and typically ordered disclosed in civil rights cases

26

27  _____

28      [2] Defendant County gave the same response to all four
    requests.

alleging excessive force, especially where plaintiffs also bring a Monell claim. (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 8, ECF No. 99.)  Defendant opposes the Motion, contending that the requested information is protected by the official information privilege and is not relevant to the litigation. (Def. San Diego Cnty.'s Opp'n 2, 4, ECF No. 108.)  It is well established that police personnel records are "relevant and discoverable" in § 1983 cases.  Green v. Baca, 226 F.R.D. 624, 644 (C.D. Cal. 2005) (citations omitted); Soto, 162 F.R.D. at 614-15.  This includes any performance evaluations of Defendants by superiors.  See Unger v. Cohen, 125 F.R.D. 67, 70 (S.D.N.Y. 1989) (finding such information to be "clearly relevant" in a § 1983 action arising out of alleged on-duty conduct).

Defendant County submitted declarations from Lieutenant Christine Harvel, commanding officer of the internal affairs division, and Captain Anthony Ray, commander of the personnel division of the San Diego County Sheriff's Department. (Def. San Diego Cnty.'s Opp'n Attach. #1 Decl. Harvel, ECF No. 108; id. Attach. #2 Decl. Ray.)  Lieutenant Harvel believes that if the records of internal investigations are "sought, disclosed and used for other purposes, the ability of [Internal Affairs] to conduct a fair and thorough administrative investigations is undermined and impaired . . . ." (Def. San Diego Cnty.'s Opp'n Attach. #1 Decl. Harvel 2, ECF No. 108.)  Harvel also cautioned that "[i]ndiscriminate disclosure and uncontrolled dissemination of confidential records" can potentially discourage individuals from providing information; disrupt the daily operations of the department; affect employee morale; consume inordinate time,

12

expense, and resources; and "frustrate the legitimate specific purposes of compiling and maintaining such records."  (_Id._ at 3.) Captain Ray's declaration is a verbatim restatement of the same concerns.  (_Id._ Attach. #2 Decl. Ray 3.)

"Questions of evidentiary privilege that arise in the course of adjudicating federal rights are governed by principles of federal common law."  _Green_, 226 F.R.D. at 643.  The Defendant's claim that disclosure would frustrate internal investigations lacks support and has been rejected by other courts.  _See Soto_, 162 F.R.D. at 612 (noting that _Kelly_ "debunks the theory that officers will be less truthful or forthright in expressing their opinions if there is a risk of future disclosure[]" and concurring with _Kelly_'s reasoning) (quoting _Kelly_, 114 F.R.D. at 665-66); _see also_ _Watson v. Albin_, No. C-06-07767 RMW, 2008 WL 1925257, at *2 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing _Kelly_, 114 F.R.D. at 672).

The Defendant County failed to explain how disclosure of the relevant documents to Plaintiffs and their attorneys pursuant to a protective order would harm a significant government or privacy interest.  _See Soto_, 162 F.R.D. at 613; _Kelly_, 114 F.R.D. at 670. The declarations of Lieutenant Harvel and Captain Ray do not establish that a protective order would be insufficient to protect significant interests; they fail to project how much harm would be done to the threatened interests if disclosure under a protective order were made.  _Soto_, 162 F.R.D. at 613.  Yet, both declarants

13

1  request that in the event disclosure is ordered, the Court "fashion
2  a protective order to preclude any disclosure or dissemination of
3  any records, documents or information ordered disclosed for any
4  purpose other than the express and specific purpose for which the
5  Court has ordered such disclosure." (Def. San Diego Cnty.'s Opp'n
6  Attach. #1 Decl. Harvel 4, ECF No. 108; id. Attach. #2, Decl. Ray
7  4.)

8      The ten factors identified in Kelly to determine whether a
9  claim of privilege for official information bars discovery, see
10 Kelly, 114 F.R.D. at 663, all weigh in favor of disclosure.
11 Plaintiff's need for the information sought is great.  This
12 information is unlikely to be available from any source other than
13 the Defendants' records.  There is a strong public interest in
14 uncovering civil rights violations of the type at issue in this
15 case.  Soto, 162 F.R.D. at 617; Kelly, 114 F.R.D. at 667.  The
16 privacy interests asserted with respect to these documents are
17 outweighed by Plaintiff's need for the information.  A protective
18 order and the redaction of any highly personal information for
19 which Plaintiff has not shown a need will amply protect privacy
20 interests.  See, e.g., Soto, 162 F.R.D. at 616 (stating that "[a]
21 carefully drafted protective order could minimize the impact of . .
22 . disclosure").  Defendant County has not met the threshold burden
23 for invoking the official information privilege.

24     To the extent the Defendant relies on the privilege set forth
25 in California Penal Code section 832.7, federal courts do not
26 recognize section 832.7 as relevant to evaluating discovery
27 disputes in 42 U.S.C. § 1983 cases.  See, e.g., Green, 226
28 F.R.D. at 643-44; see also Miller v. Pancucci, 141 F.R.D. 292,

299 (C.D. Cal. 1992) (finding California rules for discovery and privileges, including California Evidence Code section 1043, referenced in sections of California Penal Code, to be "fundamentally inconsistent" with federal law and the liberal federal policy on discovery).

The Court also rejects Defendant's objections on the ground of the self-critical analysis privilege, the deliberative process privilege, and the required reports privilege.  The Ninth Circuit does not recognize the self-critical analysis privilege.  Union Pac. R.R. Co. v. Mower, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000) (citing Dowling v. Am. Hawaii Cruises, Inc., 971 F.2d 423, 425-26 (9th Cir.1992)); accord Branch v. Umphenour, No. 1:08-CV-01655-AWI-GSA-PC, 2014 WL 3891813, at *7 (E.D. Cal. Aug. 7, 2014); Soto, 162 F.R.D. at 611.  Furthermore, "the self-critical analysis privilege is inappropriately invoked by Defendants to shield internal investigatory documents and witness statements from discovery." Soto, 162 F.R.D. at 612.  Likewise, the application of the deliberative process privilege is not appropriate in civil rights cases against police departments.  Id.  This privilege "should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."  Id.  It does not shield from disclosure "'most of the kinds of information police departments routinely generate.'"  Id. (quoting Kelly, 114 F.R.D. at 659).  "Both the internal affairs investigations as well as the records of witness/police officer statements are of the type that would be routinely generated by Defendants."  Id. at 612-13.

Defendant also asserts the required reports privilege, which applies if (1) the subject report is mandated and (2) federal law

provides for the privilege.  See Wiener v. NEC Elecs., Inc., 848 F. Supp. 124, 128 (N.D. Cal. 1994).  Additionally, the privilege is qualified and can be outweighed by a showing of substantial need. Pittman v. Cnty. of San Diego, Civil No. 09-CV-1952-WQH(WVG), 2010 U.S. Dist. LEXIS 97569, at *8 (S.D. Cal. Sept. 17, 2010).  In any event, the Defendant has not established the second prong for the privilege, and the objection fails.  For all these reasons, the Court GRANTS Plaintiff's Motion to Compel Defendant County to produce Deputy Ritchie and Taft's performance evaluations and training records for the time period of 1996 through 2006.

> 2.  Fitness for duty evaluations and return to work reports (document requests 14, 15, 16, & 17)

Plaintiff sought all fitness for duty evaluations for the years 1996 to the present for Defendants Ritchie (request number fourteen) and Taft (request number fifteen). (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at 4, ECF No. 99.)  The County objected, claiming the phrase "fitness for duty" was vague and ambiguous.  (Id. Ex. 3, at 12-13.)  It also invoked the same deliberative process, self-critical analysis, required reports, and official information privileges.  The Defendant claimed that disclosure of medical records is an invasion of privacy, and that these records are not relevant to the action.  (Id.)

Medina also requested all "Workers' Compensation permanent and stationary return to work reports" as related to Defendants' employment as San Diego Sheriff Deputies from 1996 to present for Ritchie (request number sixteen) and Taft (request number seventeen). (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at

16

5, ECF No. 99.)  Defendant County opposed these requests on the grounds of privilege and relevance.  (Id. Ex. 3, at 13-15.)

Plaintiff moves to compel, arguing that the fitness for duty evaluations and return to work reports are relevant to Plaintiffs' claims and necessary for Plaintiffs to prove their case.  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 9, ECF No. 99.)  Medina argues that Plaintiffs are entitled to know whether any evaluator was aware of the Defendants' reckless propensities.  Plaintiff also argues that the records are discoverable to the extent Defendants might rely on them to prove that they were fit for duty and justified in the shooting.  (Id.)  Finally, Medina contends that the records are neither privileged nor confidential under Jaffee v. Redmond, 518 U.S. 1 (1996).  (Id. at 9-10.)

San Diego County opposes the motion, arguing that fitness for duty and return to work records are protected from disclosure as private medical records.  (Def. San Diego Cnty.'s Opp'n 5, ECF No. 108.)  It does not cite any authority to support this assertion, and fails to address Jaffee.

When ruling on a motion to compel, a court "generally considers only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel."  Calderon v. Experian Info. Solutions, Inc., 290 F.R.D. 508, 516 n.4 (D. Idaho 2013) (citation omitted).  Because Defendant's brief does not further address the deliberative process, self-critical analysis, required reports, and official information privileges raised in the objections, those objections are overruled, and the Court will focus on the principal objection,

17

the privacy of medical records.  If this objection is a euphemism
for protection under the psychiatrist-patient privilege, it fails.
Disclosure is still required if the Court engages in a balancing of
privacy interests.

In <u>Jaffee v. Redmond</u>, the Supreme Court held "that
confidential communications between a licensed psychotherapist and
her patients in the course of diagnosis or treatment are protected
from compelled disclosure under Rule 501 of the Federal Rules of
Evidence."  518 U.S. 1, 15 (1996).  This privilege generally
applies only when the results of the evaluations were not disclosed
to third parties.  <u>See</u> <u>Phelps v. Coy</u>, 194 F.R.D. 606, 608 & n.2
(S.D. Ohio 2000) (holding that the psychotherapist-patient
privilege did not protect information learned by a psychologist
where she evaluated the officer at the behest of his municipal
employer and disclosed the information to the employer); <u>Kamper v.</u>
<u>Gray</u>, 182 F.R.D. 597, 599 (E.D. Mo. 1998) (psychotherapist-patient
privilege did not apply to communications, reports, notes,
documents, and test scores resulting from county police officers'
counseling sessions with mental health professionals where county
had required officers to undergo psychological evaluations on two
occasions as part of their employment, and evaluation results were
subsequently submitted to employer); <u>Barrett v. Vojtas</u>, 182 F.R.D.
177, 179 (W.D. Pa. 1998) (holding psychotherapist-patient privilege
did not apply to conversations and notes taken during counseling
sessions with psychiatrist and psychologist where officer was
ordered to undergo examinations by them, and both doctors
subsequently submitted reports to borough officials).

08cv1252 BAS(RBB)

In this case, any documents responsive to this request were created in the course of the deputies' employment with the County, and were made part of their personnel files. Because the records were shared with a third party, their employer, the deputies had no expectation that their conversations were confidential. Barrett, 182 F.R.D. at 179 ("There would be no reasonable expectation of confidentiality, and therefore no confidential intent, if a party to a conversation was aware that the other party may report on the conversation to a third party."). Defendant's privacy objections are overruled.

The Defendant asserts additional objections. It claims, "fitness for duty and return to work information is protected from disclosure under the provisions of the Federal Privacy Act (5 U.S.C. § 5529), and state privacy rights . . . ." (Def. San Diego Cnty.'s Opp'n 5, ECF No. 108.) It also maintains that disclosure is "impermissible under the Freedom of Information Act (5 U.S.C. [§] 552(b)(6)(7))." (Id.)

"The [Federal] Privacy Act applies only to 'agencies' as defined by 5 U.S.C. § 551(1) and 5 U.S.C. § 552(f)(1), and does not encompass state agencies or bodies." Womack v. Metro. Transit Sys., Case No. 09cv2679 BTM(NLS), 2011 U.S. Dist. LEXIS 19844, at *29 (S.D. Cal. Feb. 28, 2011). The Freedom of Information Act only applies to federal agencies. Hammerlord v. City of San Diego, Case No. 11-cv-1564 JLS (NLS), 2012 U.S. Dist. LEXIS 157740, at *15 (S.D. Cal. Nov. 2, 2012). Finally, federal law, not California Penal, Civil, and Government Code sections, dictates whether a particular privilege applies in a § 1983 case. See Rogers v. Giurbino, 288 F.R.D. 469, 484 (S.D. Cal. 2012). Privacy concerns

19

1   will be protected by directing the County to produce responsive

2   documents pursuant to a protective order.  Accordingly, the Court

3   GRANTS Plaintiff's Motion to Compel production of Defendants

4   Ritchie and Taft's fitness for duty evaluations and return to work

5   reports for the years 1996 to the present.

6               3.   Documents related to the underlying incident
                     (document request 18)

7

8       In document request number eighteen, Plaintiff asked Defendant

9   County to produce all reports, interviews, witness statements,

10  diagrams, photographs, investigative summaries, or any audio or

11  visual recording made as a result of any investigation by the San

12  Diego Sheriff's Department into the shooting death of Robert J.

13  Medina.  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at 5,

14  ECF No. 99.)  County objected to this request for production and

15  repeated its previously rejected objections that information is

16  protected by deliberative process, self-critical analysis, required

17  reports, and official information privileges.  (Id. Ex. 3, at 15.)

18  Defendant also referred to its response to Plaintiff's request for

19  production number one, the privilege log, and the declarations

20  concerning the privilege log.  (Id. at 16.)

21      Plaintiff's document request number one appears to be

22  substantially similar to request number eighteen.  In request

23  number one, Plaintiff asked for all documents and things comprising

24  the Homicide Investigation" in possession of the County or San

25  Diego Sheriff's Department "which relate to the INCIDENT and its

26  investigation."  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2,

27  at 2, ECF No. 99.)  In response, Defendant stated that the

28  previously produced Homicide Report will be produced again at

20

Plaintiff's expense.  (<u>Id.</u> Ex. 3, at 2.)  Defendant agreed to
produce photographs, recordings, and audio interviews.  (<u>Id.</u> at 3.)
Plaintiff is not moving to compel production pursuant to document
request number one.  The Motion to Compel and supporting documents
do not provide sufficient information to allow the Court to
determine how Medina's request number eighteen differs from her
request number one.

Nonetheless, the records created in the course of the
investigation into the shooting death of Robert Medina are clearly
relevant to this civil rights action.  <u>See</u> <u>Kelly</u>, 114 F.R.D. at
665-66.  The information was generated by the San Diego Sheriff's
Department, and it is not otherwise available to Plaintiff.  For
the reasons stated above, the Court overrules Defendant's
objections on the basis of deliberative process, self-critical
analysis, and required reports privileges.  <u>See</u> <u>Soto</u>, 162 F.R.D. at
611-13; <u>Wiener</u>, 848 F. Supp. at 128.

The official information privilege likewise does not apply
because Defendant has not met the threshold burden under <u>Kelly</u>.  As
discussed earlier, the declaration of Lieutenant Harvel, commanding
officer of the San Diego Sheriffs Internal Affairs Department,
fails to explain why a protective order would not suffice to
safeguard significant governmental or privacy interests, or to
project how much harm would be done to the threatened interests if
disclosure were made.  <u>Soto</u>, 162 F.R.D. at 613; <u>Kelly</u>, 114 F.R.D.
at 670.  Plaintiff's Motion to Compel production of documents
identified in request number eighteen to Defendant County is
GRANTED.

4.   <u>Internal Affairs reports and investigations of other incidents or complaints (document requests 19 & 20)</u>

In document requests nineteen and twenty, Plaintiff seeks citizen complaints relating to false arrest, unlawful detention, unlawful search or seizure, excessive force, improper use of firearm, improper use of lethal force, false reports, false statements, untruthful or other improper procedures by Defendants Ritchie and Taft for the years 1996 to the present.  Specifically, document request number nineteen listed the following items:

All reports of complaints made or internal affairs investigations conducted alleging or relating to false arrest, unlawful detention, unlawful search or seizure, excessive force, improper use of firearm, improper use of lethal force, false reports, false statements, untruthfulness or other improper procedures by Defendant MARK RITCHIE for the years 1996 to the present, and the investigation of said complaints, including, but not limited to:

a) the full investigation of each complaint or investigation, including all statements (written, audio or video recordings) of all participants and witnesses;

b) the names, addresses and telephone numbers of the persons who filed the complaints or generated the investigation and any statements (written, audio or video recordings) they provided;

c) the names, address and telephone numbers of all persons, whether law enforcement officers or private persons, who were percipient witnesses to the events which gave rise to the filing of the complaints or generation of the investigation, and any statement (written, audio or video recordings) each such person provided;

d) the written reports of the investigation of these complaints or investigations, including complaints which may have been determined to be unsustained; and

e) verbatim copies of all other records, reports, notes, photographs and audio or video recordings made as a result of the law enforcement agency's investigation of the complaints.

22

> As to all items requested, Plaintiffs request the information be furnished regardless of the outcome, disposition or result of the complaint, report or investigation.

(Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at 5-6, ECF No. 99.)  Medina sought the same records pertaining to Defendant Taft in document request number twenty.  (Id. at 6-7.)

Defendant objected to the requests, again invoking the deliberative process, self-critical analysis, required reports, and official information privileges.  (Id. Ex. 3, at 17-18.)  The County also claimed the information is irrelevant and protected from disclosure under privacy laws.  (Id.)  In opposing Medina's motion, Defendant argues that "similar act information" cannot be used to prove any misconduct in this case.  It also claims that "unfinished investigation documentation should not be disclosed because they are [sic] inherently incomplete and have not been finally approved for dissemination within the agency."  (Def. San Diego Cnty.'s Opp'n 3, ECF No. 108.)

Internal affairs investigations into citizen complaints against defendants are "presumptively discoverable" where relevant.  Kelly, 11 F.R.D. at 665-66.  Records of citizen complaints against law enforcement involving excessive force are relevant in civil rights cases.  Soto, 162 F.R.D. at 620.  These records may be "crucial to proving [a] [d]efendant's history or pattern of such behavior."  Id.  "Information contained in these files may be relevant on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers."  Hampton, 147 F.R.D. at 229.  It may also show "evidence of a continuing course of conduct reflecting malicious intent."  Id.

23

To the extent Defendant suggests that incomplete investigation documentation should not be produced, it does not cite any authority for the proposition that relevant information contained in citizen complaints is not discoverable until or unless the agency completes its investigation of the complaint.[3]  Plaintiff argues that any post-incident events must be disclosed because they are relevant to her claim against the County for maintaining an unlawful policy of deliberate indifference to the lives and liberty of the public.  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 13, ECF No. 99.)  Plaintiff alleged that Defendant San Diego County failed to adequately train deputies on the constitutionally permissible use of force, and that deliberate indifference is evidenced by the failure to change its policy.  (Consolidated Compl. 18-19, ECF No. 57.)

"[P]ost-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."  Henry v. Cnty. of Shasta, 132 F.3d 512, 519 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir. 1998).  "When a county continues to turn a blind eye to severe violations of . . . constitutional rights -- despite having received notice of such violations -- a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference."  Id.

Defendant's submissions are not enough to satisfy the threshold burden of showing that privilege applies.  "The official

---

[3] Neither the opposition brief nor the privilege log specifies which investigations have not been completed.

24

information privilege serves an important purpose, but it does not
automatically apply to all evaluative portions of internal affairs
reports."  Carter v. Carlsbad, No. 10cv1072-IEG (BLM), 2011 WL
669227, at *4 (S.D. Cal. Feb. 15, 2011).  As noted before, the
affidavits submitted by Defendant County fail to establish that a
protective order would be insufficient to protect significant
governmental or privacy interests.  Soto, 162 F.R.D. at 613.  The
Court is not required to conduct an in camera review of documents
where Defendants have not made a sufficient threshold showing that
the records are privileged.  Kelly, 114 F.R.D. at 671; see also
Ramirez v. Cnty. of Los Angeles, 231 F.R.D. 407, 410 (C.D. Cal.
2005) ("[T]he court does not believe that it is necessary to
conduct an in camera review of the subject documents because
defendants did not comply with requirements to invoke the official
information privilege.").

     Plaintiff asserts that the privilege log for documents
pertaining to Defendant Ritchie is incomplete; she compares the
privilege log here with the privilege log in another federal civil
rights case involving Defendant Ritchie.  (Compare Pl.'s Mot.
Compel Attach. #1 Mem. P. & A. 4, ECF No. 99, with id. Attach. #2
Decl. Acosta Ex. 2, at 4-7, and id. Ex. 5, at 5-8.)  Defendant does
not address this discrepancy.  To the extent any descriptive
information responsive to Plaintiff's document request nineteen was
omitted from the privilege log, the privilege log should be
amended.  All Defendants are reminded of their duty to supplement
or correct discovery responses that are incomplete or inaccurate.
See Fed. R. Civ. P. 26(e).

The Defendant's threshold showing is insufficient. Furthermore, privacy and governmental interests can be adequately safeguarded by a protective order.   For these reasons, the Court GRANTS Plaintiff's Motion to Compel the production of items identified in document requests nineteen and twenty.

> 5.   <u>Discipline, reprimand, or remedial training records
> (document requests 21 & 22)</u>

Document request number twenty-one seeks the following:

> [A]ny records of discipline, reprimand or remedial
> training imposed upon defendant MARK RITCHIE as a result
> of the INCIDENT or any other act of false arrest,
> unlawful detention, unlawful search and seizure, use of
> excessive force, improper use of firearm, improper use of
> lethal force, false statement, false report or other
> improper action.

(Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at 7, ECF No. 99.)   Document request number twenty-two seeks the same information regarding Defendant Taft.  (<u>Id.</u> at 8.)   The same unsubstantiated objections are asserted:   the deliberative process, self-critical analysis, required reports, and official information privileges. (<u>Id.</u> Ex. 3, at 19-20.)   Defendant also claimed the information is irrelevant and protected from disclosure under privacy laws.  (<u>Id.</u>)

The information Plaintiff seeks in these two requests is relevant for the same reasons outlined above with respect to the internal investigations and citizen complaints (requests nineteen and twenty).  <u>See</u> <u>Hampton</u>, 147 F.R.D. at 229; <u>Soto</u>, 162 F.R.D. at 614-15.  Defendants' discipline records relating to this incident are relevant and discoverable.  Discipline records that involve allegations of false arrest, unlawful detention, unlawful search and seizure, use of excessive force, improper use of firearm, improper use of lethal force, false statement, and false reporting

08cv1252 BAS(RBB)

are relevant and should be produced.  The information "may be crucial to proving [a] [d]efendant's history or pattern of such behavior."  Soto, 162 F.R.D. at 620.  Records of this type may also be relevant to issues of "credibility, notice to the employer, ratification by the employer and motive of the officers."  Hampton, 147 F.R.D. at 229 (finding information regarding other instances of misconduct relevant to the punitive damages claim because it "may lead to evidence of a continuing course of conduct reflecting malicious intent").  Plaintiff's Motion to Compel the production of documents sought in requests twenty-one and twenty-two is GRANTED.

6.   Civil Service Commission records (document requests 24 & 25)

In document request twenty-four, Plaintiff seeks "[a]ll documents and files relating in any way to Civil Service Commission proceedings relating in any way to Defendant MARK RITCHIE."  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 2, at 8, ECF No. 99.)  The same request with regard to Defendant Taft is contained in document request twenty-five.  (Id.)  Defendant again objected to the requests, invoking the deliberative process, self-critical analysis, required reports, and official information privileges. (Id. Ex. 3, at 21-22.)  It continues to claim that the information is irrelevant and protected from disclosure under privacy laws, and asserts that "[a]fter a reasonable inquiry and diligent search, there are no documents responsive to this request."  (Id.)  In opposing Plaintiff's Motion to Compel, Defendant states that it has "no control or possession of records of the Civil Service Commission which is an independent adjudicatory body from Defendants."  (Def. San Diego Cnty.'s Opp'n 1 n.1, ECF No. 108.)

Federal Rule of Civil Procedure 34 provides that "[a] party may serve on any other party a request . . . to produce . . . the following items in the responding party's possession, custody, or control:  any designated documents or electronically stored information . . . ."  Fed. R. Civ. P. 34(a).  "Control is defined as the legal right to obtain documents upon demand."  United States v. Int'l Union of Petrol. & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989).  Thus, "[a] party responding to a Rule 34 production request . . . 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'"  Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted); see A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (same).  Thus, a responding party may be required to produce a document that is not in its possession if the responding party has a "legal right to obtain the document."  Bryant v. Armstrong, 285 F.R.D. 596, 603 (S.D. Cal. 2012) (citation omitted).  The burden of proving that a document is in the possession, custody or control of a responding party rests on the requesting party.  See Clinton v. California Dept. of Corr., 264 F.R.D. 635, 645 (E.D. Cal. 2010).

Defendant San Diego County's objections to document requests twenty-four and twenty-five did not state that it lacks control over the records because the Civil Service Commission is a separate entity.  That objection has been waived.  When a party fails to provide any response or objection to interrogatories or document requests, courts deem all objections waived and grant a motion to compel.  See Richmark Corp. v. Timber Falling Consultants, 959 F.2d

1468, 1473 (9th Cir. 1992) (finding that a party who failed to timely object to interrogatories and document production requests waived any objections); 7 James Wm. Moore et al., <u>Moore's Federal Practice</u>, § 33.174[2], at 33–106, § 34.13[2][a], at 34–56 to 34–56.1 (3d ed. 2012). "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of objection." <u>Richmark</u>, 959 F.2d at 1473. Similarly, to the extent Defendant's claim in opposition to the Motion to Compel presents a new argument, the objection comes too late. The reason for requiring timely objections to discovery requests is to give the propounding party an opportunity to file a motion to compel to address inadequate objections.

In this case, even if timely asserted, the objection that the County lacks control over the documents is not well taken. The Court takes judicial notice, <u>see</u> Fed. R. Evid. 201(b)(2), that San Diego County Civil Service Commission is the administrative appeals body for the San Diego County in personnel matters. County of San Diego Civil Service Rules, Rule I-Civil Service Commission, available at <u>www.sdcounty.ca.gov/civilservice/pdf/csrFull.pdf.</u> The Civil Service Commission is also included in the list of departments on the County of San Diego's public website: http://sdpublic.sdcounty.ca.gov/your-county-government/county-departments/. Given this, the Defendant has not convincingly asserted that it does not have the legal right to obtain the documents from the Civil Service Commission. <u>See Soto</u>, 162 F.R.D. at 619. The Motion to Compel further responses is therefore GRANTED as to requests for production numbers twenty-four and twenty-five. Defendant is ordered to produce the documents or provide a further

29

1  response under oath explaining what efforts were made to obtain the

2  requested documents.

3           7.   Critical Incident Review Board records and reports
                 (document request 26)

4

5       In request for production number twenty-six, Medina sought all

6  "Critical Review Reports or similar reports and materials related

7  to the INCIDENT." (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex.

8  2, at 8, ECF No. 99.) Defendant objected to the request, invoking

9  the same deliberative process, self-critical analysis, required

10 reports, and official information privileges. (Id. Ex. 3, at 23.)

11 It also claimed the information is protected from disclosure under

12 privacy laws, and that responsive documents will only be released

13 pursuant to a Court order. (Id.) In the privilege log provided in

14 connection with the discovery responses, Defendant also indicated

15 the information is protected by the attorney-client communication

16 privilege and attorney work product doctrine. (Id. Ex. 4, at 12-

17 13.)

18      The privilege log identifies three items; two are letters from

19 R. Faigin to S. Amos described as "CIRB report re: officer involved

20 shooting re: Robert Medina." (Id. at 13.) The first letter is

21 dated August 3, 2009, and the second October 14, 2008. The third

22 document is described as a "sign-in sheet for Encinitas Pre-CIRB

23 conference" regarding the same incident, and is dated October 14,

24 2008. (Id.) Defendants County of San Diego, Taft, and Ritchie are

25 all listed as parties claiming the privileges. (Id.) In the

26 opposition to Plaintiff's motion, Defendant San Diego County

27 asserts only that the Critical Incident Review Board ("CIRB")

28

                              30                      08cv1252 BAS(RBB)

1  records are protected by the attorney-client communication

2  privilege.  (Def. San Diego Cnty.'s Opp'n 2, 6, ECF No. 108.)

3       The purpose of the attorney-client privilege is "to encourage

4  full and frank communication between attorneys and their clients."

5  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  "'The party

6  asserting an evidentiary privilege has the burden to demonstrate

7  that the privilege applies to the information in question.'"

8  Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (quoting

9  Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988)).

10  "'Because it impedes full and free disclosure of the truth, the

11  attorney-client privilege is strictly construed.'"  United States

12  v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quoting Weil v.

13  Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir.

14  1981)).  The privilege "protects only those disclosures necessary

15  to obtain informed legal advice which might not have been made

16  absent the privilege." Fisher v. United States, 425 U.S. 391, 403

17  (1976).  It applies "'only when necessary to effectuate its limited

18  purpose of encouraging complete disclosure by the client.'"

19  Griffith, 161 F.R.D. at 694 (quoting Tornay, 840 F.2d at 1428).

20       The attorney-client communication privilege consists of eight

21  elements:

22       (1) Where legal advice of any kind is sought
         (2) from a professional legal adviser in his capacity as
23       such,
         (3) the communications relating to that purpose,
24       (4) made in confidence
         (5) by the client,
25       (6) are at his instance permanently protected
         (7) from disclosure by himself or by the legal adviser,
26       (8) unless the protection be waived.

27  Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977).  Defendant

28  failed to establish that the two letters and the sign-in sheet

satisfy the attorney-client communication test.  First, Defendant has not submitted any evidence that an attorney-client relationship existed between San Diego County, Taft, or Ritchie, and either "R. Faigin" or "S. Amos."  Nor has the Defendant shown that the communications were made in confidence and for the purpose of seeking legal advice.

The privilege typically does not apply to internal police investigations, such as the critical incident review proceedings at issue.  See Griffith, 161 F.R.D. at 694-97 (stating that statements made during investigation were not subject to attorney-client privilege because the officer believed the interview was required and done, in part, to determine whether police misconduct had occurred, and thus the interviews were not conducted primarily to obtain legal advice and were not confidential); accord Gonzalez v. Municipal Ct., 67 Cal. App. 3d 111, 119-20, 136 Cal. Rptr. 475, 479-80 (Ct. App. 1977) (concluding that statements made to police internal affairs investigators were not protected by the attorney-client privilege because the officer knew they could be the basis for disciplinary action against him and thus were not confidential).

The burden is on the party asserting the attorney-client privilege to establish that the privilege applies to the requested documents.  Conforto v. Mabus, Case No. 12cv1316-W(BLM), 2014 U.S. Dist. LEXIS 109970, at *25 (S.D. Cal. Aug. 8, 2014) (citing Tornay v. United States, 840 F.2d at 1426).  The County did not carry its burden.  Accordingly, the Court finds that the documents are not protected by the attorney-client privilege.

Defendant's privilege log also claimed that the CIRB records are protected by the attorney work product doctrine.  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 4, at 13, ECF No. 99.)  The opposition brief, however, does not discuss the attorney work product doctrine as a ground for objecting to discovery.  (See Def. San Diego Cnty.'s Opp'n 6, ECF No. 108.)

When ruling on a motion to compel, a court "'generally considers only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel . . . .'"  Calderon, 290 F.R.D. at 516 n.4 (citation omitted).  If a party fails to continue to assert an objection in opposition to a motion to compel, courts deem the objection waived.  See id.

Because Defendant did not assert the attorney work product doctrine in the opposition brief, that objection is waived.  It also fails on the merits.  Federal Rule of Civil Procedure 26(b)(3) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  Nevertheless, those materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Id.  But even when substantial need for work product has been shown, the Court must still "protect against

33

disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The burden is on the party claiming the privilege to establish that the withheld documents are protected from discovery by the attorney work product doctrine. See 6 James Wm. Moore et al., Moore's Federal Practice, § 26.70[5][a], at 26-454 (3d ed. 2014) (footnote omitted). "The party seeking work product protection must establish that the material is a document or tangible thing prepared in anticipation of litigation for that party." Id. at 26-454-55 (footnote omitted). "A mere allegation that the work product rule applies is insufficient to invoke its protection." Id. at 26-455 (footnote omitted).

As discussed above, Defendant failed to submit any evidence showing the existence of an attorney-client relationship between San Diego County or Deputies Ritchie and Taft, and S. Amos or R. Fagin. Also, the Defendant does not show that the two reports written by S. Amos in connection with the CIRB were "prepared in anticipation of litigation" as required by Rule 26(b)(3)(A). Finally, Defendant waived this objection by raising it in the privilege log but abandoning it in the opposition to Plaintiff's motion. For these reasons, the CIRB documents are not protected by the work product doctrine.

The records relate to the investigation of the underlying shooting incident and are clearly relevant to this case. For the reasons discussed earlier, the deliberative process, self-critical analysis, required reports, and official information privileges do not apply to these documents. Accordingly, the Court GRANTS

1    Plaintiff's Motion to Compel production of documents identified in

2    request twenty-six.

3         **C.   California Highway Patrol Defendants**

4         Plaintiff moved to compel multiple discovery responses from

5    Defendants Nava and Fenton, California Highway Patrol officers.

6    (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 2, ECF No. 99.)   In

7    their opposition, Defendants allege that Medina failed to meet and

8    confer prior to bringing this Motion.   (Defs. Nava & Fenton's Joint

9    Opp'n 4, ECF No. 105.)

10        According to the Civil Local Rules for the Southern District

11   of California, "The court will entertain no motion pursuant to

12   Rules 26 through 37, Fed. R. Civ. P., unless counsel shall have

13   previously met and conferred concerning all disputed issues." S.D.

14   Cal. Civ. R. 26.1(a).   A court can deny a motion to compel solely

15   because of a party's failure to meet and confer prior to filing the

16   motion.   <u>Scheinuck v. Sepulveda</u>, No. C 09-0727 WHA (PR), 2010 U.S.

17   Dist. LEXIS 136529, at *3-4 (N.D. Cal. Dec. 15, 2010); <u>see Shaw v.

18   Cnty. of San Diego</u>, No. 06-CV-2680-IEG (POR), 2008 U.S. Dist. LEXIS

19   80508, at *3-4 (S.D. Cal. Oct. 9, 2008) (denying plaintiff's motion

20   to compel for failing to meet and confer).   Nonetheless, courts may

21   still decide a motion on the merits despite a failure to meet and

22   confer.   <u>See Marine Grp., LLC v. Marine Travelift, Inc.</u>, No.

23   10cv846-BTM (KSC), 2012 U.S. Dist. LEXIS 49064, at *6-7 (S.D. Cal.

24   Apr. 6, 2012) (explaining that a failure to meet and confer is

25   grounds for denying a motion, but still addressing the merits).

26        Medina's Motion to Compel states that the parties have "met

27   and conferred including in person several times and reached an

28   impasse as to the production of . . . records . . . ." (Pl.'s Mot.

1  Compel Attach. #1 Mem. P. & A. 2, ECF No. 99.)  A disagreement
2  emerged while they were engaged in discovery and were conducting
3  depositions.  The parties' efforts to resolve the discovery issues
4  are confirmed in the declaration of Defendant Fenton's counsel of
5  record, Michael Cayaban, submitted in support of Defendant's
6  opposition:

>      Subsequent to service of plaintiff's document
> demands and prior to responses being provided, the
> parties did discuss that defendants would be asserting
> various objections and would not be producing all of the
> documents sought.  As such, the parties attempted to come
> to some potential agreement on an efficient way to
> proceed and resolve the expected discovery dispute.  The
> parties did agree to production of CHP policies pursuant
> to a protective order but came to no agreement regarding
> the production of other documents that defendants
> indicated would not be produced.  The parties did discuss
> submitting a joint motion to the Court along with the
> documents that defendants were intending to withhold.
> However, it is my understanding from conversations with
> plaintiff's counsel that this Court would not allow the
> parties to proceed in this matter and would only resolve
> a discovery dispute pursuant to a regular noticed motion.

16 (Defs. Nava & Fenton's Joint Opp'n Attach. #2 Cayaban Decl. 2, ECF
17 No. 105.)  The same statement appears in the declaration of
18 Defendant Nava's attorney Lee Roistacher.  (Id. Attach. #1
19 Roistacher Decl. 2.)  These representations are consistent with
20 Plaintiff's assertions.

21      Defendants Nava and Fenton argue that Plaintiff failed to meet
22 and confer after receiving Defendants' objections.  The parties met
23 several times and were able to resolve several of the disputed
24 issues and agree on a protective order [ECF No. 103].  Ultimately,
25 this discovery motion followed.  The Court agrees that it might
26 have been prudent for Plaintiff to engage in another meet and
27 confer session before bringing the Motion to Compel.  Given these
28 facts, however, the Court is satisfied that Plaintiff fulfilled her

1  requirement to meet and confer.  The Court will decide Plaintiff's

2  motion on the merits.

3            1.   Document requests ten, twelve, thirteen, and sixteen
                  to Defendant Nava

4

5       In document request number ten to Defendant Nava, Plaintiff

6  asked for Nava's California Highway Patrol performance evaluations

7  for the years 1996 through 2006.  (Pl.'s Mot. Compel Attach. #2

8  Decl. Acosta Ex. 8, at 3, ECF No. 99.)  Nava objected to this

9  request, stating that the documents are subject to privacy rights,

10 the official information privilege, and are irrelevant.  (Id. Ex.

11 9, at 7.)  Defendant also stated that no responsive documents exist

12 prior to his hire date in November 2000, and that all performance

13 evaluations for the 2000-2006 period were destroyed pursuant to

14 CHP's document retention policy.  (Id.)

15      Plaintiff also sought Nava's fitness for duty evaluations

16 (request twelve) and workers compensation permanent and stationary

17 return to work reports (request thirteen) from 1996 to present.

18 (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 8, at 4, ECF No.

19 99.)  Nava objected to both requests, stating that the documents

20 are irrelevant and are protected by privacy rights.  (Id. Ex. 9, at

21 8.)  He also stated that no responsive documents "exist or have

22 ever existed."  (Id.)  Finally, in document request sixteen,

23 Plaintiff sought records of discipline, reprimand or remedial

24 training imposed on Nava as a result of the underlying incident "or

25 any other act of false arrest, unlawful detention, unlawful search

26 and seizure, use of excessive force, improper use of firearm,

27 improper use of lethal force, false statement, false report or

28 other improper action."  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta

1   Ex. 8, at 6, ECF No. 99.)  Nava objected to the request as

2   overbroad, compound, and irrelevant as to documents after 2006.

3   (Id. Ex. 9, at 11.)  Nevertheless, Defendant also stated that no

4   responsive documents "exist or have ever existed."  (Id.)

5        In the joint opposition to Plaintiff's Motion, Defendants Nava

6   and Fenton reiterate that no responsive documents exist in

7   connection with Plaintiff's document requests number ten, twelve,

8   thirteen, and sixteen.  (Defs. Nava & Fenton's Joint Opp'n 4, ECF

9   No. 105.)  Defendants therefore argue that they cannot be compelled

10  to produce any documents in response to these requests.  (Id.)

11       When responding to a request for production of documents under

12  Rule 34 of the Federal Rules of Civil Procedure, a party is to

13  produce all relevant documents in his "possession, custody, or

14  control."  Fed. R. Civ. P. 34(a)(1).  "This Court cannot compel the

15  production of documents that do not exist."  Banks v. Beard, Civil

16  No. 3:CV-10-1480, 2013 U.S. Dist. LEXIS 99905, at *6 (M.D. Pa. July

17  17, 2013); accord Myhre v. Seventh-Day Adventist Church Reform

18  Movement Am. Union Int'l Missionary Soc'y, 298 F.R.D. 633, 645

19  (S.D. Cal. 2014).  "[W]hen a response to a production of documents

20  is not a production or an objection, but an answer, the party must

21  answer under oath."  7 James Wm. Moore et al., Moore's Federal

22  Practice, § 34.13[2][a], at 34-57 (footnote omitted).  Similarly,

23  if a responding party contends that documents are not in its

24  custody or control, the court may require more than a simple

25  assertion to that effect.  See id. § 34.14[2][a], at 34-72 to 34-73

26  (footnote omitted); see also Schwartz v. Mktg. Publ'g Co., 153

27  F.R.D. 16, 21 (D. Conn. 1994) (citing cases establishing that the

28

38                                        08cv1252 BAS(RBB)

absence of possession, custody, or control of documents that have
been requested must be sworn to by the responding party).

Defendant Nava's response to the requests for production was
not provided under oath.  The declaration from Lieutenant Mentink,
the custodian of records for the California Highway Patrol's San
Diego area office, discusses the CHP's file retention policy but
does not explicitly state that the requested documents do not
exist.  (Defs. Nava & Fenton's Joint Opp'n Attach. #3, Mentink
Decl. 2, ECF No. 105.)  The Defendant failed to comply with the
requirement that he state under oath that he lacks possession,
custody, and control of documents requested under Rule 34.
Accordingly, the Court GRANTS Plaintiff's Motion to Compel further
responses to document requests number ten, twelve, thirteen, and
sixteen to Defendant Nava.[4]  He is ordered to produce the
responsive documents or, in a properly executed response, attest
that the documents do not exist and cannot be retrieved.

> 2. Document requests ten, twelve, thirteen, and sixteen to Defendant Fenton

Plaintiff's request number ten to Defendant Fenton contained a
typographical error, seeking performance evaluations of Leo Nava
instead of Fenton.  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex.
6, at 3-4, ECF No. 99.)  Defendant Fenton objected on the ground
that requested documents are protected by the right to privacy and
official information privilege, and stated that the documents no

_____

[4] Whether Defendants had a duty to suspend a document
retention policy and implement a litigation hold is not before the
Court at this time.  See Apple Inc. v. Samsung Elecs. Co., Ltd.,
881 F. Supp. 2d 1132, 1136-37 (N.D. Cal. 2012) (discussing duty to
preserve evidence).

longer exist pursuant to CHP's file retention procedures.  Fenton also responded that he "does not have possession, custody or control over Defendant Nava's training records." (Id. Ex. 7, at 8.)

Plaintiff also sought Fenton's fitness for duty evaluations (request twelve), workers compensation permanent and stationary return to work reports (request thirteen), and discipline records (request sixteen).  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 6, at 4, 6, ECF No. 99.)  In response, Defendant stated that no responsive documents exist.  (Id. Ex. 7 at 9, 10, 13.)  Defendant Fenton's responses suffer from the same defect as Defendant Nava's.  Defendant did not properly attest to the fact that the responsive documents do not exist because they were purged.  Similarly, the declaration from Lieutenant Recatto, the custodian of records for the Oceanside area office, discusses the CHP's file retention policy but does not explicitly state that the requested documents do not exist and cannot be retrieved.  (Defs. Nava & Fenton's Joint Opp'n Attach. #4, Recatto Decl. 2, ECF No. 105.)  The Defendant did not state under oath that he lacks possession, custody, and control of documents requested.  Accordingly, Plaintiff's Motion to Compel further responses to document requests number ten, twelve, thirteen, and sixteen to Defendant Fenton is GRANTED.  He is to produce the documents or, in an answer under oath, state that the documents do not exist and cannot be retrieved.

　　　　　3.　Document request eleven to Defendant Nava

In document request eleven to Nava, Plaintiff sought "[a]ll records relating to training received . . . and courses attended . . . for the years 1996 through 2006, including but not limited to

40

current P.O.S.T. certificate, status of mandatory P.O.S.T. training, firearms and qualification dates, scores and remediation." (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 8, at 4, ECF No. 99.) Nava responded that no documents exist prior to November 2000, his hire date, and that existing records are irrelevant, subject to privacy rights, and shielded by the official information privilege. (Id. Ex. 9, at 7.) Defendant also provided a privilege log listing three documents that had been withheld: (1) electronic training system print out; (2) training records from California Highway Patrol Employee's Training System Records System (AGO 615-628); and (3) Employment History (AGO 047-048). (Id. at 7-8.)

In the joint opposition to Plaintiff's Motion, Defendants argue that Plaintiff Medina failed to establish that all training records are relevant to this case. (Defs. Nava & Fenton's Joint Opp'n 8, ECF No. 105.) Defendants point out that Medina does not allege a Monell cause of action against the CHP, and the request for all training records goes beyond the scope of Plaintiff's claims in this lawsuit. (Id.)

Defendant Nava, as the party opposing disclosure, has the burden to show that discovery should not be allowed. Oakes, 179 F.R.D. at 283. He has not carried his burden of explaining and supporting his objections to the disclosure of his training records. See id. Defendant failed to produce any training records, invoking his right to privacy, official information privilege, and relevance. Cases relied on by Defendants Nava and Fenton in their joint opposition, nevertheless, ordered the production of training records relevant to the asserted claims.

41

See <u>Robinson v. Adams</u>, No. 1:08-cv-01380-AWI-SMS PC, 2011 WL
2118753, at *15 (E.D. Cal. May 27, 2011) ("Plaintiff has stated
that his intention is to show that there is a habit and pattern of
excessive force and therefore documents relating to training in use
of force may be relevant."); <u>Megargee v. Wittman</u>, No. CV F 06 0684
LJO WMW P, 2007 WL 2462097, at *2-3 (E.D. Cal. Aug. 27, 2007)
("Plaintiffs are entitled to the relevant portions of the personnel
files and training records, subject to a protective order."). 
Defendant does not argue which portions of his training records are
irrelevant, or that producing all of Nava's training records is
unduly burdensome.

Plaintiff's request for training records is not overbroad
given the factual background of the case.  The allegations against
Defendant Nava include the use of excessive force, intent to
inflict harm, and failure to intervene.  Defendant's training
records are relevant, and may lead to the discovery of additional
information relevant to his on-duty conduct.  <u>Unger</u>, 125 F.R.D. at
70.  Plaintiff's Motion to Compel the production of documents
identified in document request number eleven to Defendant Nava is
GRANTED.

4.   <u>Document request eleven to Defendant Fenton</u>

Plaintiff's request number eleven to Defendant Fenton
apparently contained a typographical error, seeking training
records of Leo Nava instead of Fenton.  (Pl.'s Mot. Compel Attach.
#2 Decl. Acosta Ex. 6, at 3-4, ECF No. 99.)  Defendant Fenton
objected to the request, invoking privacy and official information
privilege.  (<u>Id.</u> Ex. 7, at 8.)  Fenton also stated that he cannot
comply with the request because he does not have "possession,

custody or control over Defendant Nava's training records."  (Id.)

Plaintiff's typographical mistake in the document request served on Defendant Fenton does not excuse him from responding. JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc., 821 F. Supp. 1347, 1350 (N.D. Cal. 1992) ("Although plaintiff could have taken greater care in preparing its papers, the issue is whether the defendant had 'actual notice' of the discovery request that could be imputed to him as a party despite the wrong name.") (citing Schiavone v. Fortune, 477 U.S. 21 (1986)).

Here, Plaintiff served almost identical sets of document requests on both Nava and Fenton.  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 6, ECF No. 99; id. Ex. 8.)  Request numbers ten and eleven in each set named Defendant Leo Nava.  Both sets were served on all counsel in this case.  Moreover, in opposing the motion to compel, Defendants acknowledge that "[d]emand number 11 propounded to both Nava and Fenton asked for Nava's training records between 1996 and 2006."  (Defs. Nava & Fenton's Joint Opp'n 4, ECF No. 105.)  There is little doubt that Plaintiff intended to seek both Nava's and Fenton's records in discovery.  Instead of extending professional courtesy to Plaintiff's counsel and clarifying the requests, Defendant Fenton responded to request eleven as if Plaintiff intended to request Nava's records from Fenton.  Furthermore, Fenton's counsel apparently did not raise this concern during the attorneys' discovery conferences.

In their joint opposition to Plaintiff's Motion to Compel, Defendants do not raise the privacy or official information privilege arguments; Fenton merely contends that he does not have custody or control over Nava's training records.  When ruling on a

43

motion to compel, a court "generally considers only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel." <u>Calderon v.</u> <u>Experian Info. Solutions, Inc.</u>, 290 F.R.D. at 516 n.4 (citation omitted). "[W]hen an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege waived." 10A John Kimpflen, J.D., et al., <u>Federal Procedure, Lawyers Edition</u> § 26:778 (2013) (citing <u>Sonnino v. Univ. Kansas Hosp. Auth.</u>, 220 F.R.D. 633, 642 (D. Kan. 2004)).

Plaintiffs have alleged that Defendant Fenton's actions were in the course of his duties as a CHP officer. (Consolidated Compl. 4, ECF No. 57.) They claim that each Defendant's conduct while on duty was unlawful. (<u>Id.</u>) Specifically, Plaintiffs contend that during the vehicle pursuit, Fenton falsely reported an assault with a deadly weapon with the intent to harass, harm, or retaliate against Robert Medina for his failure to stop. (<u>Id.</u> at 8.) They also point to Defendant Fenton's statement -- "Let's end this. Let's end this." -- as further proof of a retaliatory motive. (<u>Id.</u> at 8-9.) Plaintiffs argue that Fenton's use of deadly force was unjustified because the physical evidence refutes his account of the events. (<u>Id.</u> at 14.) Given these allegations, Defendant Fenton's training records are relevant and should be produced for the same reasons as those outlined earlier in connection with Defendant Nava. The Court GRANTS Plaintiff's Motion to Compel production of documents requested in document request number eleven to Defendant Fenton.

5.   <u>Document requests fourteen to Nava and Fenton</u>

In separate document requests, Defendants Nava and Fenton are asked to produce "[a]ll reports, interviews, witness statements, diagrams, photographs, investigative summaries or any other document or audio or visual recording made as a result of any investigation (internal affairs or otherwise) by the State of California and/or California Highway Patrol into the INCIDENT . . . ."  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 6, at 4, ECF No. 99; <u>id.</u> Ex. 8 at 4.)  In response, each Defendant stated that although the CHP was not the "lead investigatory agency involved in the November 16, 2016 incident," it conducted an administrative review of the incident and generated an "Officer Involved Shooting Reconstruction Report."  (<u>Id.</u> Ex. 7, at 10-11; <u>id.</u> Ex. 9, at 8-9.)  Nava and Fenton objected to the production of several documents in the Report, invoking the official information privilege, right to privacy, attorney-client privilege, and attorney work product.  (<u>Id.</u> Ex. 7, at 3; <u>id.</u> Ex. 9, at 9-10.)

In opposing Plaintiff Jennifer Medina's Motion to Compel, Defendants allege that they produced over 1200 pages of non-privileged material generated in the administrative review of the incident.  (Defs. Nava & Fenton's Joint Opp'n 8, ECF No. 105.) They claim they withheld the following documents:  (1) June 27, 2008 Memorandum Of Findings - Policy And Procedure Review of Officer Involved Shooting (Nava), numbered AGO 1-7, 642-49; (2) May 14, 2008 Memorandum Of Findings - Policy And Procedure Review of Officer Involved Shooting (Fenton), numbered AGO 8-10, 629-41; (3) April 11, 2008 Memo to Office Of General Counsel, unnumbered; (4) Vehicle Accident Report, numbered AGO 394-98, undated; (5)

1   Employment Histories, numbered AGO 432-47, undated; (6) November

2   15, 2006 Daily Incident Logs, numbered AGO 592-94, (7) Training

3   Records from California Highway Patrol Employees Training Records

4   System, numbered AGO 600-11 (Fenton), 615-628 (Nava)); and (8)

5   Officer Safety Certification, numbered AGO 597-99 (Fenton), 613-14

6   (Nava)).  (Id.; Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 9, at

7   9-10.)

8        Nava and Fenton argue that Plaintiff would "gain nothing

9   through the disclosure of such personnel documents," because

10  "Defendants have already produced over 1200 pages of documents

11  relating specifically to this incident, including the San Diego

12  County Sheriff's Office Homicide Investigation and all but 50 pages

13  of the CHP's Officer Involved Shooting Administrative review."

14  (Defs. Nava & Fenton's Joint Opp'n 10, ECF No. 105.)  At the same

15  time, Defendants allege that the disclosure of withheld documents

16  would have a "chilling effect on the open-exchange of information

17  and would discourage frank and open discussions regarding CHP's

18  internal policies, and would lead to an environment that is less

19  safe for officers and the public."  (Id.)  Nava and Fenton argue

20  that the Plaintiff fails to show the relevance of the withheld

21  items.  (Id. at 8.)  They also claim that the information in the

22  documents was "already disclosed through written discovery or

23  depositions."  (Id. at 10.)

24       In support of their asserted privileges, Defendants submitted

25  declarations from CHP Lieutenant Karyn Mentink, custodian of

26  records for the San Diego Area, and CHP Lieutenant Peter Recatto,

27  custodian of records for the Oceanside Area.  (Defs. Nava &

28  Fenton's Joint Opp'n Attach. #3 Mentink Decl., ECF No. 105; id.

1  Attach. #4 Recatto Decl.)  Both declarants state that "[d]isclosure

2  of material subject to a protective order will not suffice."

3  (Defs. Nava & Fenton's Joint Opp'n Attach. #3 Mentink Decl. 4, ECF

4  No. 105; id. Attach. #4 Recatto Decl. 4.)

5          It will be abundantly clear, for example, to witnesses
           that the statements made by them, allegedly in confidence
6          to CHP, were not truly confidential.  In addition, the
           privacy interests of those persons discussed in the work
7          product, for example, peace officers with personnel
           records, will not be adequately protected; their interest
8          is harmed when the information is disclosed.  Finally,
           the ability of CHP to engage in objective self-critical
9          analysis will have been highly compromised.

10  (Defs. Nava & Fenton's Joint Opp'n Attach. #3 Mentink Decl. 4, ECF

11  No. 105; id. Attach. #4 Recatto Decl. 4.)

12         In order to properly invoke the official information

13  privilege, the affidavit or declaration must be submitted by "a

14  responsive official within the agency who has personal knowledge of

15  the principal matters to be attested to in the affidavit or

16  declaration."  Hampton, 147 F.R.D. at 230 (quoting Kelly, 114

17  F.R.D. at 669).  Among other things, the agency official must

18  specify the governmental or privacy interests that would be

19  threatened by disclosure.  Id.

20         [T]he affiant must have personal knowledge of the
           principal matters covered by the affidavit.  The
21         requirement of personal knowledge . . . is important
           because the most reliable information will come from
22         people with direct knowledge about what interests are
           threatened by a particular disclosure and how much harm
23         to those interests is likely.

24  Kelly, 114 F.R.D. at 669-70.  Mere familiarity with CHP policies

25  and procedures is insufficient.  "It would suffice, for example,

26  for the affidavit to be provided by the head of the internal

27  affairs unit, or by a person with some relevant supervisorial or

28  policy making role."  Id. at 669.  Defendants failed to meet the

1   threshold burden because the declarations do not establish that the

2   two custodians of records have personal knowledge of the

3   governmental or privacy interests that may be implicated by

4   disclosure of the requested documents or that the declarants'

5   responsibilities make them qualified to describe how disclosure

6   subject to a protective order would create a substantial risk of

7   harm to those interests or to project how much harm would result.

8   See Hampton, 147 F.R.D. at 230-31.

9       Defendants argue that witness statements to CHP must remain

10  "truly confidential."  But "'a general assertion that a police

11  department's internal investigatory system would be harmed by

12  disclosure of the documents is insufficient' to meet the threshold

13  test for invoking the official information privilege." Soto, 162

14  F.R.D. at 614 (quoting Chism, 159 F.R.D. at 534-35).

15      Nava and Fenton maintain that the agency's self-critical

16  analysis will suffer from disclosure of the records, but the Ninth

17  Circuit does not recognize this privilege.  Branch v. Umphenour,

18  2014 WL 3891813, at *7; Soto, 162 F.R.D. at 611.  Defendants'

19  claims regarding the chilling effect disclosure of these documents

20  would have are likewise unpersuasive.

21          [T]here is no empirical support for the contention that
           the possibility of disclosure would reduce the candor of
22         officers who contribute to internal affairs
           investigations, and since there are solid reasons to
23         believe that that possibility might have the opposite
           effect (improving accuracy and honesty), there is no
24         justification for offering near absolute protection to
           the statements that go into such reports or to the
25         opinions and recommendations that conclude them.

26  Kelly, 114 F.R.D. at 665-66 (stating that internal affairs

27  investigations are "presumptively discoverable"); see also Price v.

28  Cnty. of San Diego, 165 F.R.D. 614, 620 (S.D. Cal. 1996) ("[T]he

48

Court is convinced that the infringement upon the frank and independent discussions regarding contemplated policies and decisions of the County . . . , caused by disclosure of these documents, can be alleviated through the use of a strict protective order against use or dissemination of the materials outside of this lawsuit.").

Defendants asserted the attorney-client privilege to avoid disclosing two documents that appear to be part of an "Officer Involved Shooting Reconstruction Report"; however, for Nava and Fenton, the privilege has not been established.  See In re Excel Innovations, Inc., 502 F.3d 1086, 1099 (9th Cir. 2007) ("Ordinarily, the party asserting attorney-client privilege has the burden of establishing all of the elements of the privilege."); In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services.").

Defendants claimed that attorney-client privilege protects (1) a memo to the office of general counsel dated April 11, 2008, and (2) an undated vehicle accident report.  (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 9, at 9-10, ECF No. 99.)  Nava and Fenton fail to identify the author(s) of each document; the recipients; the reason(s) each document was created; and whether each individual has an attorney-client relationship with any author, recipient, or other interested party.  Nothing in the record shows the existence of an attorney-client relationship, that the documents at issue are communications made to seek legal advice, or that they were intended to be confidential.  See Martin, 278 F.3d at 1000.  To the

extent Defendants argue that the vehicle accident report is also protected as attorney work product, they have failed to show that the report "would not have been generated but for the pendency or imminence of litigation." Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 507 (S.D. Cal. 2003) (discussing fact work product).

In sum, the Court rejects Defendants' objections on the basis of official information privilege, attorney work product, and attorney-client privilege.  The information included in the administrative review of the shooting is clearly relevant. Plaintiff's need for the information contained in the Officer Involved Shooting Reconstruction Report outweighs Defendants' privacy rights, and is unlikely to be available from any other source.  Soto, 162 F.R.D. at 617 & n.8 (rejecting defense counsel's statements that comparable information can be obtained through interrogatories or depositions).  Plaintiff's Motion to Compel production of documents sought in document requests fourteen to Defendants Nava and Fenton is GRANTED.

> 6.   Document request fifteen to Defendants Nava and Fenton

Document request number fifteen to Defendant Fenton asks that he produce the following items:

> All reports of complaints or internal affairs investigations conducted alleging or relating to false arrest, unlawful detention, unlawful search or seizure, excessive force, improper use of firearm, improper use of lethal force, false reports, false statements, untruthful or other improper procedures by Defendant TIMOTHY FENTON for the years 1996 to the present, and the investigation of said complaints, including, but not limited to:
>
> a) the full investigation of each complaint or investigation, including all statements (written, audio or video recordings) of all participants and witnesses;

b) the names, addresses and telephone numbers of the persons who filed the complaints or generated the investigation and any statements (written, audio or video recordings) they provided;

c) the names, address and telephone numbers of all persons, whether law enforcement officers or private persons, who were percipient witnesses to the events which gave rise to the filing of the complaints or generation of the investigation, and any statement (written, audio or video recordings) each such person provided;

d) the written reports of the investigation of these complaints or investigations, including complaints which may have been determined to be unsustained; and

e) verbatim copies of all other records, reports, notes, photographs and audio or video recordings made as a result of the law enforcement agency's investigation of the complaints.

As to all items requested, Plaintiffs request the information be furnished regardless of the outcome, disposition or result of the complaint, report or investigation.

(Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 6, at 4-5, ECF No. 99.)  Medina sought the same records from Defendant Nava.  (Id. Ex. 8, at 4-5.)

Defendant Fenton objected to the request as overbroad, vague, and irrelevant.  (Id. Ex. 7, at 12.)  He also invoked right to privacy, state law privileges, and the official information privilege.  (Id.)  Fenton stated that pursuant to CHP's file retention policy, all documents related to citizen complaints are destroyed after five years, and all memoranda of findings or investigations that do not result in employee discipline are destroyed after three years.  (Id.)

Fenton's response also indicated that two documents were withheld:  (1) a citizen's complaint about an incident that occurred on October 18, 2013, involving the validity of a stop and

51

the driving of a patrol vehicle; and (2) a citizen's complaint
about a November 18, 2012 incident involving discourtesy. (Id.)
Medina sought complaints "relating to false arrest, unlawful
detention, unlawful search or seizure, excessive force, improper
use of firearm, improper use of lethal force, false reports, false
statements, untruthful or other improper procedures." (Pl.'s Mot.
Compel Attach. #2 Decl. Acosta Ex. 6, at 4, ECF No. 99.) Unless
these two withheld items relate to the type of misconduct alleged
in this case, they are not relevant to the claims or defenses and
are unlikely to lead to discovery of admissible evidence. See Fed.
R. Civ. P. 26(b)(1). Furthermore, the incidents post-date the
events that are the subject of this suit by more than six years.
Finally, the Plaintiffs are not asserting a Monell claim against
the California Highway Patrol. For all these reasons, the withheld
documents are not responsive to document request fifteen.
Accordingly, the Court DENIES Plaintiff's Motion to Compel with
regard to these two documents.

It is not clear from Fenton's statements, however, whether
responsive documents for the time period prior to 2012 ever existed
or if they were destroyed pursuant to CHP's policies. Regardless,
Fenton did not provide an answer under oath that no documents exist
prior to 2012. As discussed earlier, "when a response to a
production of documents is not a production or an objection, but an
answer, the party must answer under oath." 7 James Wm. Moore et
al., Moore's Federal Practice, § 34.13[2][a], at 34-57 (footnote
omitted); see also Schwartz, 153 F.R.D. at 21. The Court GRANTS in
part Plaintiff's Motion to Compel a further response under oath to

1   document request number fifteen to Defendant Fenton to address the

2   existence of documents for the time period from 1996 to 2012.

3       Defendant Nava objected to Plaintiff's request for production

4   number fifteen as overbroad and irrelevant, and invoked the right

5   to privacy and official information privilege. (Id. Ex. 9, at 11.)

6   He also stated that no responsive documents exist, or have ever

7   existed, for the time period between 2000-2006. (Id.) Nava's

8   response was likewise not given under oath. The declaration from

9   Lieutenant Mentink, the custodian of records for the San Diego

10  area, discusses the CHP's file retention policy but does not

11  explicitly state that the requested documents do not exist. (Defs.

12  Nava & Fenton's Joint Opp'n Attach. #3, Mentink Decl. 2, ECF No.

13  105.) The Defendant failed to state under oath that he does not

14  possess, control, or have custody of the documents requested.

15  Accordingly, the Court GRANTS in part Plaintiff's Motion to Compel

16  a further response to document request number fifteen to Defendant

17  Nava to address the existence of documents for the time period from

18  2000 to 2006.

19      Defendant Nava also stated that he withheld one document -- a

20  citizen's complaint regarding a traffic citation dated September

21  2010. (Pl.'s Mot. Compel Attach. #2 Decl. Acosta Ex. 9, at 11, ECF

22  No. 99.) The traffic citation appears to have no bearing on the

23  issues in this case and post-dates the events in this suit.

24  Therefore, the document need not be produced. The Motion to Compel

25  is DENIED as to this document.

26      Because the Court GRANTS Plaintiff's Motion to Compel further

27  responses to document requests number fifteen, Defendants Fenton

28  and Nava are ordered to provide Plaintiff a properly executed

53

response, attesting under oath that the documents do not exist for the stated time period.  Alternatively, responsive documents should be produced.

### III.  CONCLUSION

For the reasons above, the Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel [ECF No. 99].  All documents ordered produced are to be provided to Plaintiff by October 10, 2014, and all further responses that are to be made under oath are also due by October 10, 2014.  Documents are to be produced pursuant to a protective order limiting use and dissemination of the items.  The limited protective order already on file in the case [ECF No. 103] may serve as a model for a further stipulated order.

As to Defendant San Diego County, the Court GRANTS Plaintiff's Motion to Compel as follows:

(1) Defendants Ritchie and Taft's performance evaluations and training records for the time period of 1996 through 2006 (document requests 10, 11, 12, & 13) are to be produced;

(2) Defendants Ritchie and Taft's fitness for duty evaluations and return to work reports for the years 1996 to the present (document requests 14, 15, 16, & 17) are to be produced;

(3) The records related to the investigation of the shooting death of Robert J. Medina (document request 18) are to be produced;

(4) Internal affairs reports and investigations of other incidents or complaints pertaining to Ritchie and Taft for the period 1996 to present (document requests 19 & 20) are to be produced;

08cv1252 BAS(RBB)

(5) Defendants Ritchie and Taft's discipline and reprimand records relating to the shooting incident (document requests 21 & 22) are to be produced;

(6) Records of Civil Service Commission proceedings (document requests 24 & 25) are to be produced, or Defendant San Diego County must provide responses under oath explaining what efforts it undertook to obtain responsive documents; and

(7) Critical Review Reports related to the shooting incident (document request 26) are to be produced.

As to Defendants Leo Nava and Timothy Fenton, the Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel:

(1) Defendant Nava and Fenton's performance evaluations, fitness for duty evaluations, workers compensation return to work reports, and discipline records (document requests 10, 12, 13, & 16) are to be produced.  Alternatively, for each answer that responsive documents do not exist, the Defendant must provide responses under oath explaining what efforts he undertook to obtain responsive documents;

(2) Nava and Fenton's training records (document requests 11) are to be produced;

(3) Defendants Nava and Fenton are to produce all reports and records pertaining to the shooting incident (document requests 14);

(4) For document requests fifteen, Defendant Nava is not required to produce withheld documents relating to a citizen's complaint concerning a 2010 traffic citation.  Defendant Fenton is not required to produce withheld documents relating to two citizens' complaints - one in 2012 and the other in 2013.  For other documents that are or may be responsive to document request

1  fifteen, Defendant Fenton is to produce the documents from 1996 to
2  the present or, for any documents that no longer exist, provide
3  responses under oath explaining what efforts he undertook to obtain
4  the responsive documents.  Likewise, Defendant Nava is to produce
5  responsive documents from 2000 to the present or provide responses
6  under oath explaining, for any documents that no longer exist, what
7  efforts he undertook to obtain the responsive documents.

8      Finally, there are personnel records that Plaintiff has not
9  addressed in her motion, e.g. sheriff identification cards, photos,
10 personal identifying information (home address, badge receipts, and
11 other personal data).  As to these withheld items, Plaintiff has
12 not moved to compel their production, and they are not the subject
13 of this Order.

14
15 Dated: September 25, 2014
                            RUBEN B. BROOKS
16                          United States Magistrate Judge

17
18 cc:  All Parties of Record
19
20
21
22
23
24
25
26
27
28